Argued and submitted November 5, 1993, reversed and remanded to circuit court
with instructions April 20, petition for review allowed June 14, 1994 (319 Or 211)

Carol BARCIK,
as guardian ad litem for Scott Barcik, a minor;
William Jansen, as guardian ad litem
for Tom Jansen, a minor;
Joe Kasten and Sheilah Kasten, as guardians ad litem
for Shannon Kasten, a minor;
Barry Edwards and Mona Edwards, as guardians ad litem
for Marce Edwards, a minor;
Cordis Lowery and Sharon Lowery, as guardians ad litem
for Matt Lowery, a minor;
David Frost; Josh Olson; and
Chuck Kostur and Dianne Kostur, as guardians ad litem
for Kay Kostur, a minor,
*Appellants,*

*v.*

Mark KUBIACZYK;
Al Davidian; Russ Joki; Pat Biggs; Jack Clinton;
Mike Nelson; Richard Carlson; Gary Cumpston; and
the Tigard-Tualatin School District 23 J,
*Respondents.*

(C920085CV; CA A77165)

873 P2d 456

Jonathan M. Hoffman argued the cause for appellants. With him on the briefs were Michael G. Harting and Martin, Bischoff, Templeton, Langslet & Hoffman.

Duane A. Bosworth argued the cause for respondents. With him on the brief were Lori Lee Brocker and Davis Wright Tremaine.

Before Rossman, Presiding Judge, and De Muniz and Leeson, Judges.

ROSSMAN, P. J.

## ROSSMAN, P. J.

Plaintiffs, students in the Tigard-Tualatin School District, appeal from a declaratory judgment that district regulations regarding student publications comply with the constitutional requirements of Article I, section 8, of the Oregon Constitution, to the extent that the regulations authorize school administrators to review and censor official student publications before distribution, and to review unofficial student publications after distribution and discipline students responsible for the distribution and/or publication of material that violates the regulations.[1] Plaintiffs sought an injunction

---

[1] The regulations governing official school publications provide:

"School publications, productions or displays which are or may be fairly characterized as school-sponsored or as part of the District curriculum, whether or not they occur in a traditional classroom setting, are subject to review and evaluation by school administrators. The final decision about the suitability of any material in question shall rest with the principal, after review and consultation with the teacher/advisor and student representative(s) prior to publication, production or display.

"Such publications, productions or displays shall be reviewed in light of the District's legitimate pedagogical concerns which include, but are not limited to:

"whether the material is or may be defamatory or libelous;

"whether the material is inappropriate for the age, grade level, and/or maturity of the audience;

"whether the material is poorly written, inadequately researched, or biased or prejudiced;

"whether the material is or may be otherwise disruptive to the school environment. For example, such disruption may occur if the material uses, advocates or condones the use of vulgar or profane language, or advocates or condones the commission of unlawful acts, or advocates violation of school rules, Board policy, or the Student Rights and Responsibilities Handbook;

"whether there is an opportunity for a named individual or individuals to make a response; or

"whether specific individuals may be identified even though the material does not use or give names.

"The decision may be appealed to the superintendent for review and final decision."

The administrative regulations for unofficial student publications provide:

"All nonschool-sponsored ('unofficial') publications which students want to distribute on District property or at District activities are subject to prior review, as described below. Publications will be reviewed to determine whether:

"1. the material is or may be defamatory or libelous;

"2. the material does or may reasonably be perceived to threaten or intimidate any individual or group;

"3. the material is obscene as to minors;

"4. the material contains vulgar and offensive language;

barring the continued enforcement of the regulations and a declaration that the regulations are unconstitutional insofar as they prohibit the publication and distribution of even those student publications "which are not obscene, libelous, or which do not create an imminent danger of violence or substantial disruption of school activities." Because there was no justiciable controversy before the circuit court when it entered judgment on plaintiffs' challenge to the regulations, we reverse and remand to the circuit court with instructions to dismiss the complaint and vacate the judgment, with no costs to either party in that court or on appeal.[2]

Plaintiffs Barcik, Jansen, Kasten, Edwards, Lowery, Frost and Olson were seniors at Tigard High School when the district enacted the challenged regulations on January 30, 1992. Plaintiff Kostur was a student at the district middle school. Before the regulations were enacted, the following events took place. On December 4, 1991, Barcik circulated among the high school students a flyer that solicited articles for publication in "Low-Spots," a non-school-sponsored ("underground") publication. The next morning, he was summoned to the vice principal's office and told that distribution of the flyer violated school policy because it had not been cleared with the student activities director. The vice principal issued a formal warning to Barcik and informed him that he had three options with regard to the proposed underground publication: (1) not publish it; (2) submit it to the school administration for approval before distribution; or (3) publish it without using any of the school's resources and distribute it off school grounds.

---

"5. the material advocates breaking school rules or District rules, or advocates unlawful acts; or

"6. the material will or reasonably could be anticipated to result in a substantial disruption of or a material interference with school work, school activities, discipline, the educational environment, or the rights of others within the school."

Violations of the policy on unofficial student publications

"may result in discipline pursuant to District policy and any applicable provisions of the Student Rights and Responsibilities Handbook."

[2] Defendants' cross-appeal from the trial court's holding that plaintiffs were prevailing parties under 42 USC §§ 1983 & 1988 was dismissed on defendants' own motion.

On January 13, 1992, Barcik and Jansen circulated "Low-Spots" to students on school property without the administration's prior approval. Defendant Kubiaczyk, the principal at the high school, informed Barcik and Jansen that "Low-Spots" was unacceptable, because it contained profanity and had not been submitted to the administration for prior approval. Imposition of disciplinary measures was suspended pending the circuit court's decision in this matter.[3]

On January 23, a different underground publication, "The Spots On My Dog," was circulated on the school grounds. None of the plaintiffs was involved in the publication or distribution of that publication, which contained the following language:

"Rather than say 'fuck the principal,' try saying 'fuck the system.' Mr. Kubiachyczk (whatever) may or may not be the greatest principal on the face of the earth, but he's the only one we've got. So if you must do something to him, don't insult him, kill him. Put that sorry excuse for an authority figure out of his misery in a shallow grave of term papers and vomit.

"In America, talk is cheap, don't say something about it, do something about it."

"Hi-Spots" is the official newspaper of Tigard High School. The editorial board of "Hi-Spots" consisted of Kasten, Edwards, Lowery and Frost. After the distribution of "Low-Spots," but before the appearance of "The Spots On My Dog," the "Hi-Spots" editorial board decided to write an editorial on underground student works. Frost drafted the piece, entitled "Low-Spots Says a Lot About Freedom," in which he said, *inter alia*, that the "Hi-Spots" staff "appreciate[d] the underground paper's special opinion and angle." Kubiaczyk was concerned that the "Hi-Spots" editorial would be perceived as a blanket endorsement of all underground publications, including "The Spots On My Dog." He contacted defendant Joki, the district superintendent, and told him of the proposed "Hi-Spots" editorial and of the

---

[3] The court held that the administration's efforts to censor "Low-Spots" before it was published constituted an impermissible "prior restraint" on Jansen's and Barcik's constitutional right of free expression. The court ordered that their disciplinary records be expunged of all reference to the "Low-Spots" controversy. Neither party appeals that ruling.

content of "The Spots On My Dog." Joki sent defendant Davidian, the assistant superintendent, to the high school to investigate the matter. Davidian reviewed a copy of "The Spots On My Dog" and took a copy of the "Hi-Spots" editorial to the district's attorneys. Meanwhile, publication of the editorial was put on hold. During the evening of January 23, the School Board was shown copies of "Low-Spots," "The Spots On My Dog," and the "Hi-Spots" editorial.

On January 24, Kubiaczyk met with the "Hi-Spots" editorial board. He told them that the School Board had unanimously requested that the editorial be revised, and he informed them that the piece could not be printed as written. Kasten and Edwards called the printer and instructed it to delete the editorial and to substitute in red ink, "CENSORED BY: MARK KUBIACZYK, RUSS JOKI, AL DAVIDIAN, TIGARD-TUALATIN SCHOOL BOARD."[4] The issue ran without the editorial.

On January 30, 1992, the district adopted the challenged regulations. From then until the end of the school year, the school administration, acting pursuant to the regulations, reviewed each edition of "Hi-Spots" before publication.

■      The parties stipulated in circuit court that this case presents a justiciable controversy. Consequently, neither party raises the issue of justiciability on appeal. However, it is fundamental that a court

> "cannot exercise jurisdiction over a nonjusticiable controversy because in the absence of constitutional authority, the court cannot render advisory opinions." *Brown v. Oregon State Bar*, 293 Or 446, 449, 648 P2d 1289 (1982).

*See also Brumnet v. PSRB*, 315 Or 402, 405, 848 P2d 1194 (1993). Because justiciability is a jurisdictional issue, we will examine it on our own motion. *See Ackerly v. Mt. Hood Comm. College*, 51 Or App 801, 804 n 1, 627 P2d 487 (1981). It is well settled that jurisdiction may not be conferred by stipulation or consent of the parties. *Johnson v. Assured*

---

[4] The court found that the editorial neither threatened to materially disrupt school activities nor represented an imminent danger of violence. Accordingly, it held that Kasten's, Edward's, Lowery's and Frost's rights of free speech had been transgressed. Neither party challenges that ruling on appeal.

*Employment, Inc.,* 277 Or 11, 14, 558 P2d 1228 (1977); *Brodine v. Employment Exchange Inc.,* 33 Or App 237, 240, 576 P2d 384, *rev den* 283 Or 1 (1978).

■       For a controversy to be justiciable, it " 'must involve present facts as opposed to a dispute which is based on future events of a hypothetical issue.' " *Savage v. Munn,* 317 Or 283, 292, 856 P2d 298 (1993), *quoting Brown v. Oregon State Bar, supra,* 293 Or at 449. Kostur avers that a justiciable dispute exists between herself and defendants because she "will attend Tigard High School [in the] fall and intends to enroll in journalism class and to join the HI-SPOTS staff" and because "she intends to write for LOW SPOTS and/or write and distribute non-school-sponsored publications on the campus of Tigard High School." However, those averments do not allege "present facts," but only speculative future events that may not occur as anticipated or may not occur at all. There has not been any showing that the district regulations have had a "cognizable effect" on her. *Savage v. Munn, supra,* 317 Or at 292 n 6. The hypothetical nature of her anticipatory challenge renders it non-justiciable. Accordingly, Kostur is not properly before us at this time.

■       That leaves as plaintiffs the seven seniors who graduated from the high school in June, 1992. In addition to requiring an actual litigable event as opposed to a contingency, the justiciability doctrine assures that the person or group mounting a constitutional challenge confronts continuing harm or a significant threat of future harm. Thus, another requirement for a justiciable controversy is that

> "the court's decision in the matter will have some practical effect on the rights of the parties to the controversy. * * * Cases that are otherwise justiciable, but in which a court's decision will no longer have a practical effect on or concerning the rights of the parties, will be dismissed as moot." *Brumnet v. PSRB, supra,* 315 Or at 405-06. (Citations omitted.)

Given that the remaining plaintiffs graduated from the high school in June, and the circuit court entered its judgment in September, the question arises whether their claim for declaratory and injunctive relief was moot at the time of the circuit court's judgment. *See Kay v. David Douglas Sch. Dist. No. 40,* 303 Or 574, 738 P2d 1389 (1987), *cert*

*den* 484 US 1032 (1988). Although plaintiffs sought relief on behalf of themselves and "others similarly situated," this is not a class action; accordingly, we are concerned only with the rights of these particular plaintiffs. Because they had graduated before the final judgment was entered, the court's belated decision had no practical effect on or concerning *their* rights. The actions complained of, *i.e.*, defendants' use of the district regulations, had already occurred. As the Supreme Court has noted,

> "a court cannot either mandate or enjoin an act after it has been completed, at least not until the cosmological theory of reversible time is better established. Suggestions to the contrary which date from language in *Perry v. Oregon Liquor Commission*, 180 Or 495, 498-99, 177 P2d 406 (1947), have been discarded in recent cases and should not be followed. *See Cooper v. Eugene Sch. Dist. No. 4J*, 301 Or 358, 367 n 9, 723 P2d 298 (1986); *Hay v. Dept. of Transportation*, 301 Or 129, 134, 719 P2d 860 (1986): *State ex rel Oregonian Publishing Co. v. Sams*, 298 Or 329, 332, 692 P2d 116 (1984)." *Kay v. David Douglas Sch. Dist. No. 40, supra*, 303 Or at 577.[5]

■■     That does not end our inquiry, however, for a party whose own claim is moot may, if the party has standing under the various applicable tests, "seek relief against future repetitions of the challenged governmental act." 303 Or at 577.[6] Here, plaintiffs do not have standing to contest future, *i.e.*, post-graduation, enforcement of the challenged regulations. Although they were entitled to seek protection against

---

[5] The *Perry* case and its progeny gave courts discretion to consider a moot issue of broad social import when there was a likelihood that it would recur. However, as noted in *Kay*, the Supreme Court has consistently refused in recent years to render a legal opinion " 'in the public interest' when there is no concrete underlying dispute to be decided." *State ex rel Oregonian Publishing Co. v. Sams, supra*, 298 Or at 332.

[6] Under *Kay*, a party may proceed with a moot claim if the party can establish that it has standing to contest future practices of the challenged governmental act. That rule does not aid Kostur here, however. The infirmity in her claim is not that it is moot, but that it is not ripe for judicial determination, because it is based on future hypothetical events. The doctrine announced in *Kay* operates to save only moot claims from dismissal, not unripe ones. Thus, the fact that Kostur may have *standing* to challenge future enforcement of the district regulations is immaterial. As the United States Supreme Court has noted, the doctrine of standing addresses only "*what* issues a litigant may raise, not *when* he might raise them. That a proper party is before the court is no answer to the objection that he is there prematurely." *Communist Party v. S. A. C. Board*, 367 US 1, 79, 81 S Ct 1357, 6 L Ed 2d 625 (1961). (Emphasis supplied.)

repeated application of the regulations *to them* for the balance of the 1992 school year, they could not oppose the district's future application of the regulations to students who remained in the district after plaintiffs graduated. Following graduation, plaintiffs were not, and could never again become, subject to the regulations; hence, any challenge by plaintiffs to defendants' future actions rests solely on the legally cognizable interests of *other* students. Once graduated, plaintiffs had no more than "an abstract interest in the correct application or the validity" of the regulations, and any injury that they may sustain from continued use of the regulations is no different from the injury that each plaintiff "would expect as a member of the general public." *Eckles v. State of Oregon*, 306 Or 380, 385-86, 760 P2d 846 (1988). Simply put, these plaintiffs do not have standing to seek relief against the future practices of defendants.

In sum, on the date of the circuit court's judgment, the plaintiffs who are members of the graduating class of 1992 were no longer students in the Tigard-Tualatin School District and, consequently, their request for relief against enforcement of the regulations was moot. Further, because they could not be subject to the regulations after they graduated, they lack standing to challenge future application of the regulations.[7] Accordingly, the circuit court should have dismissed their claim after their graduation.[8]

Reversed and remanded to the circuit court with instructions to dismiss the complaint and vacate the judgment, with no costs to either party in that court or on appeal.

---

[7] At oral argument, plaintiffs' counsel contended that this action is not moot, because it is "capable of repetition, yet evades review." Although that may at one time have been a reason for this court to assume jurisdiction, it is no longer. *Reiman v. Eugene Education Association*, 92 Or App 504, 507, 759 P2d 295 (1988).

[8] In light of this disposition, we need not consider whether plaintiffs were required to proceed under ORS 183.400.