Argued and submitted August 18; resubmitted In Banc September 1, reversed and remanded with instructions on appeal; affirmed on cross-appeal September 1, 1994

Ellen LOWE,
David Fidanque, Greg Evans,
David Allen, Dominick Vetri,
John Baker, Bonnie Tinker
and Doretta Schrock,
*Respondents - Cross-Appellants,*

*and*

CITY OF PORTLAND,
*Intervenor-Respondent,*

*v.*

Phil KEISLING,
Secretary of State of
the State of Oregon,
*Appellant - Cross-Respondent,*

*and*

Lon MABON,
*Intervenor-Appellant -
Cross-Respondent.*

(93C-11972; CA A84110)

882 P2d 91

Thomas A. Balmer, Deputy Attorney General, argued the cause for appellant - cross-respondent. With him on the briefs were Theodore R. Kulongoski, Attorney General, Virginia L. Linder, Solicitor General, Michael D. Reynolds, Assistant Solicitor General, and Rives Kistler, Assistant Attorney General.

Bruce R. McCain argued the cause and filed the briefs for intervenor-appellant - cross-respondent.

Charles F. Hinkle argued the cause for respondents - cross-appellants. With him on the brief were Katherine A. McDowell, ACLU Foundation of Oregon, Inc., and Suzanne B. Goldberg, Lambda Legal Defense and Education Fund.

Peter A. Kasting argued the cause for intervenor-respondent. On the brief was Jeffrey L. Rogers, City Attorney.

Michael H. Simon, Perkins Coie and David A. Urman, Ball, Janik & Novack filed a brief *amici curiae* for Jewish Federation of Portland, American Jewish Committee, and Anti-Defamation League of B'Nai B'Rith.

Paul B. Gamson and Smith, Gamson, Diamond & Olney filed a brief *amici curiae* for OEA/OACE and Robert Crumpton.

WARREN, J.

De Muniz, J., concurring.

## WARREN, J.

This case involves a challenge to a proposed initiative measure that seeks to amend the Oregon Constitution primarily to prohibit state and local governments from preventing discrimination against homosexual persons. Defendant Keisling, Secretary of State of the State of Oregon (the Secretary), and intervenor Mabon[1] appeal summary judgment for plaintiffs[2] declaring that the measure violates the Oregon Constitution and enjoining the Secretary from certifying the measure for placement on the ballot. Plaintiffs cross-appeal the dismissal of four other counts, which allege alternative bases for obtaining the declaration and injunction.

Plaintiffs' complaint seeks a declaratory judgment and injunction to prevent placement on the November, 1994, ballot of the initiative proposed by a petition filed with the Secretary of State by Mabon in May, 1993. The Supreme Court summarized the measure for purposes of ballot title certification as follows:

"SUMMARY:    Amends state Constitution. Governments cannot:

" — create classifications based on homosexuality;

" — advise or teach children, students, employees that homosexuality equates legally or socially with race, other protected classifications;

" — spend public funds in manner promoting or expressing approval of homosexuality;

" — grant spousal benefits, marital status based on homosexuality;

" — deny constitutional rights, services due under existing statutes.

---

[1] Mabon takes essentially the same position as the Secretary on most issues. Unless necessary to a complete discussion, we will not separately identify or address Mabon's arguments.

[2] Intervenor City of Portland filed a complaint seeking the same relief as the complaint filed by plaintiffs. The trial court granted the city's motion for summary judgment, which asserted the same basis as the motion filed by plaintiffs. The city has not filed a notice of cross-appeal, but is designated as a respondent to defendant's appeal. Because the complaints and motions for summary judgment raised the same issues, in our discussion of the appeal, when we refer to plaintiffs we include the city.

"Measure nonetheless allows adult library books addressing homosexuality with adult-only access. Public employees' private lawful sexual behaviors may be cause for personnel action, if those behaviors disrupt workplace." *Mabon v. Keisling*, 317 Or 406, 418, 856 P2d 1023 (1993).[3]

Plaintiffs alleged six "counts."[4] In the first, they allege that Article IV, section 4, of the United States Constitution (the

[3] The full text of the measure is set out below:

"THE MINORITY STATUS AND
CHILD PROTECTION ACT

"AN ACT

"Be It Enacted by the People of the State of Oregon:

"The Constitution of the State of Oregon is amended by creating a new section to be added to and made a part of Article 1. The new section shall be known as 'The Minority Status and Child Protection Act' and will read as follows:

"Section 41: MINORITY STATUS BASED ON HOMOSEXUALITY PROHIBITED.

"(1) In the State of Oregon, including all political subdivisions and government units, minority status shall not apply to homosexuality; therefore, affirmative action, quotas, special class status or special classifications such as 'sexual orientation,' 'domestic partnerships' or similar designations shall not be established on the basis of homosexuality.

"(2) Children, students and employees shall not be advised, instructed or taught by any government agency, department or political unit in the State of Oregon that homosexuality is the legal or social equivalent of race, color, religion, gender, age or national origin; nor shall public funds be expended in a manner that has the purpose or effect of promoting or expressing approval of homosexuality.

"(a) The State of Oregon, political subdivisions and all units of state and local government shall not grant marital status or spousal benefits on the basis of homosexuality.

"(b) The State of Oregon, political subdivisions and all units of state and local government, with regard to public employees, shall generally consider private lawful sexual behaviors as non-job related factors, provided such factors do not disrupt the work place and that such consideration does not violate subsections (1) and (2).

"(c) Though subsections (1) and (2) are established and in effect, no unit of state or local government shall deny to private persons business licenses, permits or services otherwise due under existing statutes; nor deprive, nullify, or diminish the holding or exercise of any rights guaranteed by the Constitution of the State of Oregon or the Constitution of the United States of America.

"(d) Though subsections (1) and (2) are established and in effect, this section shall not limit the availability in public libraries of books and materials written for adults which address homosexuality, provided access to such materials is limited to adults and meets local standards as established through the existing library review process.

"(3) The PEOPLE INTEND, that if any part of this enactment be found unconstitutional, the remaining parts shall survive in full force and effect. This Section shall be in all parts self-executing."

[4] In this case the plaintiffs use the term "count" to mean an alternative constitutional reason why the measure should not be placed on the November ballot.

Guaranty Clause),[5] prohibits the use of the initiative process to propose measures that would appeal to the passions of the people and would disadvantage a disfavored minority group, and that the Secretary was wrong in concluding that he had no authority or duty to determine whether the proposed initiative violates the Guaranty Clause. The second count alleges that the proposed measure violates Article IV, section 1(2)(d), of the Oregon Constitution,[6] because it contains more than one subject. The third count alleges that the proposed measure violates Article XVII, section 2, of the Oregon Constitution,[7] because it proposes to revise rather than to amend the constitution. In their fourth count, plaintiffs allege that

---

[5] Article IV, section 4, of the United States Constitution provides:

"The United States shall guarantee to every State in this Union a Republican Form of Government, and shall protect each of them against Invasion; and on Application of the Legislature, or of the Executive (when the Legislature cannot be convened) against domestic Violence."

[6] Article IV, section 1(2)(d), provides:

"An initiative petition shall include the full text of the proposed law or amendment to the Constitution. A proposed law or amendment to the Constitution shall embrace one subject only and matters properly connected therewith."

[7] Article XVII, section 2(1), provides, in part:

"In addition to the power to amend this Constitution granted by section 1, Article IV, and section 1 of this Article, a revision of all or part of this Constitution may be proposed in either house of the Legislative Assembly and, if the proposed revision is agreed to by at least two-thirds of all the members of each house, the proposed revision shall * * * be entered in their journals and referred by the Secretary of State to the people for their approval or rejection, notwithstanding section 1, Article IV of this Constitution * * *. A proposed revision may deal with more than one subject and shall be voted upon as one question."

Article IV, section 1, provides, in part:

"(1) The legislative power of the state, except for the initiative and referendum powers reserved to the people, is vested in a Legislative Assembly, consisting of a Senate and a House of Representatives. .

"(2)(a) The people reserve to themselves the initiative power, which is to propose laws and amendments to the Constitution and enact or reject them at an election independent of the Legislative Assembly.

"(b) An initiative law may be proposed only by a petition signed by a number of qualified voters equal to six percent of the total number of votes cast for all candidates for Governor at the election at which a Governor was elected for a term of four years next preceding the filing of the petition.

"(c) An initiative amendment to the Constitution may be proposed only by a petition signed by a number of qualified voters equal to eight percent of the total number of votes cast for all candidates for Governor at the election at which a Governor was elected for a term of four years next preceding the filing of the petition."

the measure has the purpose and would have the effect of violating their rights under the First Amendment and the Equal Protection Clause, and that placing the measure on the ballot would violate their substantive due process rights. Count 5 alleges that subsection (2)(c) of the measure has the effect of making the remainder of the measure "meaningless, null, and void," and therefore the measure is not a proper subject for the initiative. Finally, count 6 alleges that the measure has the purpose and would have the effect of violating fundamental rights of a class of citizens, and that placing the measure on the ballot would violate plaintiffs' rights to equal protection.

The trial court dismissed counts 1 (Guaranty Clause), 4 (substantive due process), 5 (amendment is meaningless), and 6 (equal protection) on the Secretary's motion, holding that plaintiffs lack standing and that those counts raised issues that were not ripe for review.[8] The court then denied the Secretary's motion for summary judgment and granted plaintiffs' cross-motion on counts 2 (single subject) and 3 (revision). The Secretary and Mabon appeal the summary judgment; plaintiffs cross-appeal the dismissal of their other four counts.

■ The Secretary first assigns error[9] to the court's ruling that the proposed measure violates Article IV, section 1(2)(d), of the Oregon Constitution, because it contains more than one subject. That section provides that an initiative proposing a constitutional amendment "shall embrace one subject only and matters properly connected therewith." In *OEA v. Phillips*, 302 Or 87, 727 P2d 602 (1986), the Supreme Court set out the analysis for challenges under Article IV, section 1(2)(d):

> "The constitutional text limits a proposal for amendment to 'one subject only and matters properly connected therewith.' A measure must first be scrutinized to determine whether it

---

[8] The ripeness issue was premised on the fact that, at the time the complaint was filed, the petition had not garnered the requisite number of signatures. That issue is no longer before us. According to the parties, there are now enough signatures to place the measure on the ballot.

[9] The Secretary makes only one assignment of error, which addresses both the single subject and revision issues. Mabon divides the issues into two assignments of error. For ease of discussion, we will address the issues as two separate assignments.

embraces more than one subject. If it does, it offends the constitutional limitation even if the subjects are 'properly connected,' and that is the end of the inquiry. If it does not, the single subject must be identified. When that is done, and if the proposal embraces no other matters, there is no need to inquire into proper connection. * * *

"If the proposal embraces one subject only and also other 'matters,' then, and only then, it must be determined whether those other matters are properly connected with the subject." 302 Or at 100.

The first inquiry is whether the measure "embraces more than one subject." In *Lovejoy v. Portland*, 95 Or 459, 188 P 207 (1920), the Supreme Court considered similar "one subject" language in Article IV, section 20, of the Oregon Constitution, regarding legislative acts. That section provides, in part:

"Every Act shall embrace but one subject, and matters properly connected therewith, which subject shall be expressed in the title."

The court held that the subject of a proposed law "is the matter to which the measure relates and with which it deals[.]" 95 Or at 466. In *OEA v. Phillips, supra*, 302 Or at 100, the Supreme Court concluded that there was no reason to construe Article IV, section 1(2)(d), differently from Article IV, section 20. Therefore, we conclude that the definition of "subject" is the same under Article IV, section 1(2)(d), as it is under Article IV, section 20.

The Supreme Court in *Lovejoy* also explained the harm that the single subject requirement of Article IV, section 20, was meant to address:

"This section of the Constitution was designed to do away with the several abuses, among which was the practice of inserting in one bill two or more unrelated provisions so that those favoring one provision could be compelled, in order to secure its adoption, to combine with those favoring another provision, and by this process of log-rolling the adoption of both provisions could be accomplished, when neither, if standing alone, could succeed on its own merits." 95 Or at 465.[10]

---

[10] Another abuse described was "the practice of concealing from the members of the legislature the true nature of the proposed law by giving it a false and

The single subject requirement for initiatives under Article IV, section 1(2)(d), goes to prevention of that same harm. Accordingly, we consider whether the proposed initiative contains a single subject in the light of the definitions and purposes identified by the Supreme Court in *Lovejoy v. Portland, supra.*

Plaintiffs argue, and the trial court agreed, that the proposed measure contains more than one subject: It prohibits governments from creating classifications based on homosexuality, including granting spousal benefits or marital status; prohibits expenditure of public funds in a manner promoting or expressing approval of homosexuality; prohibits advising or teaching children, students or employees that homosexuality is a classification similar to race, religion, gender, age or national origin; and it allows adult-only access to library books addressing homosexuality. Plaintiffs view those components as separate subjects.

The Secretary argues that the ballot measure contains a single subject only, and that the "matter to which the measure relates and with which it deals" is the relationship between government and homosexuality.[11] He asserts that all of the provisions in the measure are facets of one broad policy objective, which are properly connected because they are germane to that policy.

Although we agree with the Secretary that the proposed measure contains only one subject, we disagree with his characterization of the subject that the measure addresses.

---

misleading title * * *." *Lovejoy v. Portland, supra*, 95 Or at 465. That potential abuse is not a concern in considering whether the measure in fact embraces a single subject.

[11] Indeed, that is the subject that the Supreme Court identified when it reviewed the ballot title: "The proposed measure's subject is the relationship between governments and homosexuality." *Mabon v. Keisling, supra*, 317 Or at 413. We note, however, that the ballot title that the court wrote to identify the subject of the measure was narrower than that. It approved the title to say:

"AMENDS CONSTITUTION:
GOVERNMENTS CANNOT APPROVE,
CREATE CLASSIFICATIONS BASED ON,
HOMOSEXUALITY"

317 Or at 413. (Footnote omitted.) In determining whether a proposed measure embraces more than one subject, we are not bound by the Supreme Court's identification of the subject for the ballot title.

We read all of the provisions of the proposed ballot measure as dealing with and defining limitations on how state and local governments in Oregon can treat homosexuals and the subject of homosexuality. We do not view the limitations on expenditure of public funds, on minors' access to books in public libraries and on public employment as each embracing a subject different from that main subject. Each of the provisions is a means of implementing the measure's general policy of prohibiting government from approving homosexuality.

Plaintiffs argue that, if the measure contains a single subject, then it also contains other matters that are not "properly connected" with that subject. Plaintiffs' argument is premised on their view that, if the measure embraces only one subject, that subject is prohibiting minority status based on homosexuality. Because we do not adopt that identification of the subject, plaintiffs' argument fails.

We conclude that the proposed measure contains only a single subject, limitations on how state and local government may treat homosexual persons and the subject of homosexuality, and matters "properly connected" with it, and that the trial court erred in granting plaintiffs' motion for summary judgment on their second count.

■ The Secretary also assigns error to the trial court's ruling on plaintiffs' third count, in which it held that the proposed measure cannot be placed on the ballot, because it violates Article XVII, section 2, which prohibits the use of an initiative to propose a revision of, rather than an amendment to, the Oregon Constitution. The Secretary argues that a revision must effect a fundamental change in the constitution that is more profound than an amendment. He asserts that, although the Oregon courts have not provided a test for distinguishing between an amendment and a revision, this proposal is more like the property tax measure that we held constituted an amendment in *Barnes v. Paulus*, 36 Or App 327, 588 P2d 1120, *rev den* 284 Or 81 (1978), than it is like the measure proposed in *Holmes v. Appling*, 237 Or 546, 392 P2d 636 (1964), which the Supreme Court held constituted a revision.

Mabon argues that Article XVII, section 2, does not apply to changes to the constitution proposed by initiative. His theory is that Article XVII, section 2 merely provides a procedure by which the legislature can propose a revision of the constitution, but it does not affect proposed revisions initiated by the people.

Plaintiffs argue that the proposed ballot measure constitutes a wholesale change to the constitution that cannot be enacted through the initiative process. They assert that the distinction between amendment and revision is determined by reviewing the scope and subject matter of the proposed enactment, and that revisions are not limited to "a formal overhauling of the constitution." They argue that this ballot measure proposes far-reaching changes outside the lines of the original instrument, including profound impacts on existing fundamental rights and radical restructuring of the government's relationship with a defined group of citizens. Plaintiffs assert that, because the proposed ballot measure "will refashion the most basic principles of Oregon constitutional law," the trial court correctly held that it violated Article XVII, section 2, and cannot appear on the ballot without the prior approval of the legislature.[12]

We first address Mabon's argument that Article XVII, section 2(1), does not prohibit revisions instituted by initiative. In *Holmes v. Appling, supra*, the Supreme Court concluded that a revision of the constitution may not be accomplished by initiative, because of the provisions of Article XVII, section 2. 237 Or at 551. After reviewing Article XVII, section 1, relating to proposed *amendments*, the court said:

> "From the foregoing it appears that Article IV, Section 1, authorizes the use of the initiative as a means of amending the Oregon Constitution, but it contains no similar sanction for its use as a means of revising the constitution." 237 Or at 550.

---

[12] In its response to the appeals, the city agrees with plaintiffs and the trial court that the measure contains more than one subject. It further argues that a measure dealing with more than one subject cannot be an amendment but can only be a revision. Because we reject the underlying premise of its revision argument, which is that there is more than one subject in this measure, we necessarily reject the city's argument.

It then reviewed Article XVII, section 2, relating to *revisions*, and said:

"It is the only section of the constitution which provides the means for constitutional revision and it excludes the idea that an individual, through the initiative, may place such a measure before the electorate." 237 Or at 551.

Accordingly, we reject Mabon's argument that Article XVII, section 2, does not apply to constitutional revisions proposed by initiative.

On the merits, we do not agree with plaintiffs or the trial court that the proposed ballot measure would effect a revision rather than an amendment of the constitution. In *Holmes v. Appling, supra,* the Supreme Court concluded that a proposed initiative measure, which was "based in large part on the revision of the constitution drafted by the 'Commission for Constitutional Revision' authorized by the 1961 Legislative Assembly," was not an amendment, but instead constituted either a proposed revision of the constitution or a new constitution. 237 Or at 551. It provided for "a thorough overhauling of the present constitution," and was a 56-page, complete constitutional document, which "contain[ed] many and important changes in substance, many others in language, removing ambiguities and correcting errors, and still others in the arrangement of its various provisions." 237 Or at 552. The court did not decide whether the proposal was a revision or a new constitution, but concluded that it was not an amendment that could be submitted to the people through the initiative process.

In *Barnes v. Paulus, supra,* we considered whether a proposed measure to limit property taxes was an amendment that could be placed on the ballot, or was a constitutional revision that could not be proposed through the initiative process. We noted that the property tax limitation measure contained six sections totaling approximately 16 lines of type. Although we recognized that the measure would have a "ripple" effect on a number of constitutional provisions, we nonetheless held that it proposed an amendment to, rather than a revision of, the constitution. We said:

"It is impossible to draw a precise line between an amendment and a revision. Suffice it to say that the initiative

measure proposed here is more in the nature of an amendment than a revision. As such, it may properly be submitted to the people for their approval or rejection." 36 Or App at 336.

As in *Barnes v. Paulus, supra,* we need not determine in this case precisely where the line is between amendment and revision. The proposed measure in this case would not result in the kind of fundamental change in the constitution that would constitute a revision. It is much more like the one we held to be an amendment in *Barnes v. Paulus*: It defines and limits the treatment that state and local governments may accord to homosexual citizens and to the subject of homosexuality in the schools, libraries and other government forum. Although the measure may affect a number of constitutional provisions, and may in fact have substantive constitutional defects, we do not see that change as any more of a revision than the property tax limitation measure we held in *Barnes* was a proposed amendment that could be made by initiative. As in *Barnes,* this proposed change is not so far reaching as to constitute a revision. Therefore, we conclude that the proposed ballot measure would amend rather than revise the constitution. The trial court erred in granting plaintiffs' motion for summary judgment on their allegation that the proposed ballot measure violates Article XVII, section 2(1).

The Secretary's motion for summary judgment and plaintiffs' cross-motion presented the opposing views on purely legal issues. Because we have determined that plaintiffs' cross-motion for summary judgment should have been denied, it follows that the Secretary's motion for summary judgment on counts 2 and 3 should have been granted. As a result, the proposed initiative must be placed on the November ballot unless plaintiffs are correct on their cross-appeal. We therefore turn to plaintiffs' other constitutional challenges.

On cross-appeal, plaintiffs challenge the trial court's dismissal of counts 1, 4, 5 and 6 of their amended complaint.[13] The trial court dismissed for lack of standing, concluding that

---

[13] The city did not cross-appeal. Therefore, the trial court's dismissal of its parallel claims is not before us.

plaintiffs had not alleged any injury by the challenged governmental act. The court also held that the claims were not ripe. As we have said, that basis for dismissal is not before us. *See* n 8, *supra*. We review for errors of law.

Plaintiffs brought this action under the declaratory judgment statute, ORS chapter 28; the election law, ORS 246.910; and 42 USC § 1983. The Secretary argues that plaintiffs have not alleged sufficient injury to meet the standing requirements. Plaintiffs argue that they have alleged that their constitutional rights will be violated by allowing this measure to go to the voters, and that that is sufficient injury to establish standing.

ORS 246.910 provides that a person who is "adversely affected by any act or failure to act by the Secretary of State * * * under any election law, or by any order, rule, directive or instruction made by the Secretary of State * * * under any election law," may appeal to the circuit court. Neither party cites the dispositive case, *Ellis v. Roberts*, 302 Or 6, 725 P2d 886 (1986), in which the plaintiffs challenged a certified ballot measure under ORS 246.910(1) on the ground that it violated the single subject requirement of Article IV, section 1(2)(d). The Supreme Court said:

> "ORS 246.910(1) requires only that a person be 'adversely affected' before he can bring an action challenging an election ruling of the Secretary of State. In effect, this means that any registered voter – and probably others, as well – can file an action." 302 Or at 11.

Because the standing requirements for an election law challenge are less stringent than challenges under ORS chapter 28 or 42 USC § 1983, requiring only an allegation that the plaintiff is a registered voter,[14] we consider the allegations of plaintiffs' complaint to determine whether they have sufficiently alleged facts to show standing under ORS 246.910.

■ All of the plaintiffs except Vetri and Baker allege that they are electors and taxpayers in Oregon. From those allegations we infer that at least some plaintiffs are registered voters in Oregon. Consequently, they have adequately alleged

---

[14] The Secretary cites cases discussing what "adversely affected" means in the context of other statutes. Those cases are not instructive when the Supreme Court has specifically addressed the language as used in ORS 246.910(1).

standing under the standard set out by the Supreme Court in *Ellis v. Roberts, supra,* for claims brought under ORS 246.910. It appears from the complaint that each of the four counts that was dismissed was based at least in part on the election laws. Because at least one of the plaintiffs has standing to bring this challenge, the trial court erred in dismissing counts 1, 4, 5 and 6 for lack of standing.

The Secretary argues that, even if plaintiffs have standing to challenge his actions regarding this proposed measure, the trial court's dismissal was correct, because it did not have jurisdiction to decide the dispute. He asserts that the four counts are not justiciable, because they would require pre-enactment review of the proposed measure. Plaintiffs respond that they do not seek pre-enactment review of the constitutionality of the measure, but instead claim that the very act of holding the election would violate the constitution. They argue that the court may determine whether allowing an election on this measure would violate the constitution without deciding whether the measure would be constitutional if it were to be enacted.

■ The courts have no jurisdiction to entertain an action for declaratory relief if there is no justiciable controversy. A controversy is justiciable if it involves "present facts as opposed to a dispute which is based on future events of a hypothetical issue." *Brown v. Oregon State Bar,* 293 Or 446, 449, 648 P2d 1289 (1982); *see Barcik v. Kubiaczyk,* 127 Or App 273, 873 P2d 456 (1994). The justiciable controversy requirement prevents the court from rendering an advisory opinion.

In *Foster v. Clark,* 309 Or 464, 469-70, 790 P2d 1 (1990), the Supreme Court considered whether proposed initiatives could be reviewed before the election in which they are put to the voters:

"It is true * * * that a court will not inquire into the substantive validity of a measure — *i.e.,* into the constitutionality, legality or effect of the measure's language — unless and until the measure is passed. To do otherwise would mean that the courts would on occasion be issuing an advisory opinion.

"On the other hand, Oregon courts have inquired into whether matters extraneous to the language of the measure

itself disqualify the measure from the ballot. * * * Despite compliance with proper procedures, courts will prevent a measure from being placed on the ballot if the measure is legally insufficient to qualify for that ballot. * * *

"* * * * *

"We adhere to the more recent authorities, such as *Holmes v. Appling, supra,* as being the more clearly reasoned and stating the correct rule, which is: Courts have jurisdiction and authority to determine whether a proposed initiative or referendum measure is one of the type authorized by Or Const Art I § 1(5) to be placed on the ballot. * * * On the other hand, a court may not inquire into general questions of constitutionality, such as whether the proposed measure, if enacted, would violate some completely different portion of the constitution." 309 Or at 469-71.

The Secretary argues that each of the counts that the trial court dismissed, although couched in terms of seeking a declaration that the act of voting on the measure would violate the constitution, is in fact a challenge to the substantive constitutionality of the measure if enacted. We agree with the Secretary that three of the four counts, in fact, amount to attacks on the constitutionality of the measure *if enacted,* and therefore are improper pre-enactment challenges to the proposed ballot measure. However, count 1, which asserts a Guaranty Clause challenge, presents a different justiciability issue.

■ Counts 4 and 6 allege that placing the proposed measure on the ballot would violate plaintiffs' substantive due process rights and their rights under the Equal Protection Clause. However, both of those counts are premised on the allegation that the measure "would have the effect" of violating plaintiffs' rights under those constitutional provisions. Those claims are classically premature; they ask the court to inquire into the substantive constitutionality of the measure, if passed. They are not appropriate for pre-enactment review.

■ Count 5 alleges that subsection (2)(c) of the proposed measure has the effect of rendering the remainder of the measure "meaningless, null, and void," and therefore it is not a proper subject for an initiative and may not be placed on the ballot. As with counts 4 and 6, that claim requires the court to

consider whether the measure, in substance, is internally inconsistent, rather than whether it complies with the requirements for an initiative under Article IV, section 1(5). Accordingly, it also is not properly a subject of pre-enactment review. *See Foster v. Clark, supra,* 309 Or at 469, 471; *see also Oregon AFL-CIO v. Weldon,* 256 Or 307, 312, 473 P2d 664 (1970). The trial court did not err in dismissing counts 4, 5 and 6.

■     Count 1 presents a different problem. In it, plaintiffs claim that Article IV, section 4 of the United States Constitution, which guarantees to the states a republican form of government, prohibits the use of the initiative for various purposes, including, among others, to enact a state constitutional amendment that "imposes unique disabilities on an identifiable group of citizens," and to propose a measure that asks voters to act on the basis of passion and interest. Plaintiffs assert that the Guaranty Clause forbids states from holding an election by popular vote on any "proposed laws aimed at restricting the substantive rights of unpopular minority groups." They allege that the proposed measure in this case violates that principle and, therefore, the Secretary is prohibited, under the Guaranty Clause, from placing the initiative on the ballot. They also allege that the Secretary "erred in concluding that he had no authority or duty to determine whether the Petition violates Article IV, section 4."

What remedy plaintiffs seek in their first count is not clear. The count seems to be directed at obtaining a declaration that the Secretary has the authority and duty to review proposed initiatives for compliance with the Guaranty Clause. However, it could also be read as seeking a declaration that placing this initiative on the ballot would violate the Guaranty Clause. To the extent that it is directed at obtaining the latter declaration, it does not present a justiciable controversy.

In *Pacific States Teleph. & Teleg. Co. v. Oregon,* 223 US 118, 32 S Ct 224, 56 L Ed 377 (1912), which was a challenge to Oregon's initiative process, the United States Supreme Court considered whether "the creation by a state of the power to legislate by the initiative and referendum causes the prior lawful state government to be bereft of its

lawful character as the result of the provisions of § 4 of article 4 of the Constitution * * *." 223 US at 137. In other words, the Court viewed the Guaranty Clause challenge as raising the question of whether the state's allowance of lawmaking by initiative deprived the state government of its republican form. As the Court saw it, the case came down "to the single issue whether the enforcement of [the Guaranty Clause], because of its political character, is exclusively committed to Congress, or is judicial in its character." 223 US at 137. It concluded that the enforcement of the Guaranty Clause is a political question, which is a matter exclusively committed to Congress. Accordingly, the United States Supreme Court did not and could not decide whether Oregon's constitutional amendment allowing for legislation by initiative violated the Guaranty Clause.

Plaintiffs here seek a declaration that this particular proposed initiative measure may not be placed on the ballot, because allowing a vote on such a measure would violate the Guaranty Clause. They do not cite *Pacific States Teleph. & Teleg. Co. v. Oregon, supra,* or make any argument about why we are not bound by the United States Supreme Court's interpretation of the federal constitution.[15] Because this is an action for declaratory judgment, which requires that there be a justiciable controversy, we conclude that the United States Supreme Court's interpretation of the Guaranty Clause as presenting a purely political question that is exclusively for Congress and not the courts to decide, precludes the courts of this state from entering any declaration about compliance with the Guaranty Clause.[16] The trial court did not err in dismissing that portion of count 1.

---

[15] In *New York v. United States,* 505 US ___, 112 S Ct 2408, 120 L Ed 2d 120 (1992), the Supreme Court recognized that some of its more recent cases have suggested "that perhaps not all claims under the Guarantee Clause present nonjusticiable politcal questions." 120 L Ed 2d at 156. However, the Court has not yet decided that question and it has not overruled *Pacific States Teleph. & Teleg. Co. v. Oregon, supra.* Therefore, we continue to follow the Court's decision in *Pacific States.*

[16] Neither party relies on *State v. Montez,* 309 Or 564, 789 P2d 1352 (1990), to make an argument that state courts are somehow not bound by the Court's opinion in *Pacific States.* There, the defendant in a death penalty case raised a Guaranty Clause challenge to the adoption of the death penalty by initiative. The court said:

"The United States Supreme Court has provided no practical guidance as to what constitutes a 'republican form of government,' because that Court has held that, within the federal government, the enforcement of the guarantee is assigned not to the federal courts but to the political branches. *See Pacific States*

■    Plaintiffs' Guaranty Clause count can also be read as seeking a declaration regarding the Secretary's authority and duty to decide the Guaranty Clause question. That reading of the count seems to provide the basis for plaintiffs' second assignment of error, which is that the trial court erred in dismissing their allegation that the Secretary has the authority and duty to determine, pre-election, whether the act of holding an election on a particular measure would violate the Guaranty Clause.[17] They argue that the Secretary, as an elected official, has the duty under Article XV, section 3, of the Oregon Constitution to support the United States Constitution. Their sole argument is that,

> "*[i]f* the Guaranty Clause of the United States Constitution bars states from submitting to their electorates measures motivated by 'passion' and aimed at unpopular minority groups, *then* the state officials responsible for determining which initiative measures shall be placed on the

---

*Teleph. & Teleg. Co. v. Oregon*, [*supra*], (challenge to a license tax enacted by an initiative measure). Thus, claims arising under Article IV, section 4, do not present justiciable controversies in federal courts.

"That does not mean that the states may not adjudicate the compatibility of state law with the guarantee clause. This court addressed that issue with regard to Oregon's initiative system in *Kadderly v. Portland*, 44 Or 118, 144-45, 74 P 710, 75 P 222 (1903) (initiative and referendum does not abolish or destroy the republican form of government, or substitute another in its place). *See Kiernan v. Portland*, 57 Or 454, 469-80, 111 P 379, 112 P 402 (1910); *Oregon v. Pacific States Tel. & Tel. Co.*, 53 Or 162, 166, 99 P 427 (1909)." *State v. Montez, supra*, 309 Or at 603. (Footnote omitted.)

To the extent that *Montez* could be read to suggest that Guaranty Clause questions might be appropriate for state court determination under some circumstances, we decline to read it in that way. Such a reading would conflict with the Supreme Court's recognition that "a State may not impose such greater restrictions as a matter of *federal constitutional law* when this court specifically refrains from imposing them." *Oregon v. Haas*, 420 US 714, 719, 95 S Ct 1215, 43 L Ed 2d 570 (1975). (Emphasis in original.) Further, the court's reliance in *Montez* on *Kadderly v. Portland*, 44 Or 118, 74 P 710, 75 P 222 (1903), *Kiernan v. Portland*, 57 Or 454, 111 P 379, 112 P 402 (1910), and *Oregon v. Pacific States Tel. & Tel. Co.*, 53 Or 162, 99 P 427 (1909), is questionable. *Kadderly* was decided before the United States Supreme Court's opinion in *Pacific States*. The United States Supreme Court took review of *Kiernan* and *Pacific States*, and dismissed both cases for lack of a justiciable controversy, because it held that enforcement of the Guaranty Clause is a political question. *Kiernan v. Portland*, 223 US 151, 32 S Ct 231, 56 L Ed 2d 386 (1912); *Pacific States Teleph. & Teleg. Co. v. Oregon, supra.*

[17] Although the assignment of error says that plaintiffs sought a determination that the Secretary has the authority and duty to determine whether holding an election on a particular measure would violate *any substantive guaranty* of the United States Constitution, both their complaint and their brief discuss only the Secretary's authority and duty with regard to the Guaranty Clause issue.

ballot must take the Guaranty Clause into account in making that determination." (Emphasis supplied.)

The Secretary argues that there is no authority to support plaintiffs' Guaranty Clause argument, and that, in fact, the Oregon Supreme Court has already held in *Kiernan v. Portland, supra* n 16, 57 Or at 475-80, that the initiative process does not violate the Guaranty Clause.

As we have just explained above, the premise of plaintiffs' sole argument presents a question that is nonjusticiable. The United States Supreme Court has determined that Guaranty Clause questions are within the exclusive province of Congress. Because only Congress can decide whether any state action results in a violation of the Guaranty Clause, plaintiffs' premise fails. The trial court did not err in dismissing plaintiffs' Guaranty Clause count.

In summary, we conclude that the trial court did not err in dismissing counts 1, 4, 5 and 6. It did, however, err in making the declaration that the proposed initiative measure embraces more than one subject and would revise, rather than amend, the Oregon Constitution, and in enjoining the Secretary from certifying the measure for placement on the ballot.

On appeal, reversed and remanded with instructions to allow defendant's motion for summary judgment on counts 2 and 3 and for entry of judgment for defendant; affirmed on cross-appeal.

**De MUNIZ, J.,** concurring.

I agree with the lead opinion's ultimate resolution of the case. However, I disagree with the its conclusion that

"the United States Supreme Court's interpretation of the Guaranty Clause as presenting a purely political question that is exclusively for Congress and not the courts to decide, precludes the courts of this state from entering any declaration about compliance with the Guaranty Clause." (Footnote omitted.) 130 Or App at 18.

In *State v. Montez,* 309 Or 564, 789 P2d 1352 (1990), in response to the defendant's argument that the death penalty initiative under which he had been sentenced violated

Article IV, section 4, of the United States Constitution, the Supreme Court stated:

"Defendant argues that the initiative procedure, under which the people of Oregon bypass both the legislature and the governor to enact laws, somehow violates Article IV, section 4, of the United States Constitution, which provides:

" 'The United States shall guarantee to every State in this Union a Republican Form of Government, and shall protect each of them against Invasion; and on Application of the Legislature, or of the Executive (when the Legislature cannot be convened) against domestic Violence.'

"The United States Supreme Court has provided no practical guidance as to what constitutes a 'republican form of government,' because that Court has held that, within the federal government, the enforcement of the guarantee is assigned not to the federal courts but to the political branches. *See Pacific States Teleph. & Teleg. Co. v. Oregon*, 223 US 118, 32 S Ct 224, 56 L Ed 377 (1912) (challenge to a license tax enacted by an initiative measure). Thus, claims arising under Article IV, section 4, do not permit justiciable controversies in federal courts.

"That does not mean that the states may not adjudicate the compatibility of state law with the guarantee clause. This court addressed that issue with regard to Oregon's initiative system in *Kadderly v. Portland*, 44 Or 118, 144-45, 74 P 710, 75 P 222 (1903) (initiative and referendum does not abolish or destroy the republican form of government, or substitute another in its place). *See Kiernan v. Portland,* 57 Or 454, 469-80, 111 P 379, 112 P 402 (1910); *Oregon v. Pacific States Tel. & Tel. Co.*, 53 Or 162, 166, 99 P 427 (1909)." (Footnote omitted.) 309 Or at 603.

In a footnote, the lead opinion attempts to distinguish the Supreme Court's analysis by concluding that

"[t]o the extent that *Montez* could be read to suggest that Guaranty Clause questions might be appropriate for state court determination under some circumstances, we decline to read it in that way. Such a reading would conflict with the Supreme Court's recognition that 'a State may not impose such greater restrictions as a matter of *federal constitutional law* when this court specifically refrains from imposing them.' *Oregon v. Haas*, 420 US 714, 719, 95 S Ct 1215, 43 L Ed 2d 570 (1975). (Emphasis in original.) Further, the court's reliance in *Montez* on *Kadderly v. Portland*, 44 Or

118, 74 P 710, 75 P 222 (1903), *Kiernan v. Portland,* 57 Or 454, 111 P 379, 112 P 402 (1910), and *Oregon v. Pacific States Tel. & Tel. Co.,* 53 Or 162, 99 P 427 (1909), is questionable. *Kadderly* was decided before the United States Supreme Court's opinion in *Pacific States.* The United States Supreme Court took review of *Kiernan* and *Pacific States,* and dismissed both cases for lack of a justiciable controversy, because it held that enforcement of the Guaranty Clause is a political question. *Kiernan v. Portland,* 223 US 151, 32 S Ct 231, 56 L Ed 2d 386 (1912); *Pacific States Teleph. & Teleg. Co. v. Oregon, supra."* 130 Or App at 19 n 16.

The lead opinion's reading of *Pacific States* is too broad. That case does not establish any restrictions regarding the relationship between a state government and its citizens. All that the United States Supreme Court said in *Pacific States* is that, within the context of the *federal* government, the guarantee that all states will maintain a republican form of government is a matter left solely to Congress. The Court's pronouncement in *Pacific States* says nothing about the power of a state court to safeguard the republican form of government within its own boundaries.

In my view, the issue presented by plaintiffs—that the proposed initiative measure violates the Guaranty Clause, because it is motivated by "passion" with the intent of depriving a particular group in society of certain rights and privileges—is the kind of issue that the Supreme Court in *Montez* identified as appropriate for resolution by a state court. However, the difficulty I have with plaintiffs' claim is that their briefing of the issue falls short of the thoroughly researched and carefully documented presentation of the issues contemplated by the court in *Montez.* In this regard, the *Montez* court stated:

"However, a challenge to a particular initiative measure under the Guarantee Clause obviously involves extremely important as well as difficult questions. It is not an examination to be undertaken lightly, especially when Oregon's system of initiated legislation as such has long been sustained. *See Kiernan v. Portland, supra,* 57 Or at 469-80; *Oregon v. Pacific States Tel. & Tel. Co., supra,* 53 Or at 166; *Kadderly v. Portland, supra,* 44 Or at 144-45. It would require extensive briefing of the origins, the historic concerns and the drafters' political theories underlying the

Guarantee Clause and how they might bear on the particular measure at issue. Such a thorough and focused analysis has not been presented in the present case. Nothing on the face of the death penalty statute leads us to venture into these uncharted waters on our own merely because the question is raised." 309 Or at 604.

Plaintiffs appear to acknowledge the shortcomings of their presentation, but contend that, "[b]y granting defendant's motion to dismiss, the trial court prevented [them] from making the sort of legal, historical and factual showing contemplated by the Supreme Court in *Montez*." I disagree. The issue is primarily one of law and could have been thoroughly analyzed and documented in the court below as well as in this court.

*Montez* makes it clear that in absence of a thoroughly researched, documented and finely focused presentation, this kind of issue is not appropriate for judicial determination. Because the kind of presentation contemplated by the court in *Montez* has not been made here, I am compelled to conclude that the trial court did not err in dismissing count 1 of plaintiffs' complaint.

Richardson, C. J., and Leeson, J., join in this concurrence.