Argued and submitted August 26, explanatory statement
certified to Secretary of State September 11, 1980

MacAFEE,
*Petitioner,*
*v.*
PAULUS,
*Respondent.*

(SC 27201)

OREGONIANS FOR WILDLIFE
CONSERVATION,
*Petitioner,*
*v.*
PAULUS,
*Respondent.*

(SC 27205)
(Consolidated Cases)
616 P2d 493

James J. MacAfee, argued the cause *pro se.*

David A. Rhoten, of Rhoten, Rhoten & Speerstra, Salem, argued the cause for Oregonians for Wildlife Conservation.

Wm. F. Gary, Assistant Attorney General, Salem, argued the cause for respondent.

Before Denecke, Chief Justice, and Tongue, Lent, Linde, Peterson,* and Tanzer, Justices.

PER CURIAM.

---

*Peterson, J., did not participate in the decision of this case.

## PER CURIAM

Petitioner brought an original proceeding in this court under ORS 251.235 to challenge the explanation of a ballot measure prepared for use by the Secretary of State in the Voters' Pamphlet and suggested an amendment. ORS 251.185.[1] Subsequently a second petitioner filed a petition proposing a contrary amendment of the explanatory statement. After the oral argument, we certified the statement as written to the Secretary of State.

The statutes provide the following procedures for the preparation and review of statements explaining initiated or referred state measures in the Voters' Pamphlet.

*Preparation.* A committee is selected, composed of two persons appointed by the proponents of the proposed action, two persons appointed by the Secretary of State "from among the opponents, if any," and a fifth member selected by the other four or, if they do not do so, by the Secretary of State. ORS 251.205.[2] The committee's assignment is to "prepare and file with the Secretary of State, an impartial,

---

[1] ORS 251.185:

"The Secretary of State shall have printed in the voters' pamphlet for a general or special election a copy of the title and text of each state measure to be submitted to the people at the election for which the pamphlet was prepared. Each measure shall be printed in the pamphlet with the number, ballot title and the financial estimate under ORS 250.125, if any, to be printed on the official ballot, and with the explanatory statement and arguments filed relating to it. The Secretary of State also shall have printed in the voters' pamphlet any county measure, and ballot title, explanatory statement and arguments relating to it, filed by the county under ORS 251.285."

[2] The statute defines "proponents" to mean:

"(a)   With respect to any state measure initiated or referred by petition, the chief petitioners; or

"(b)   With respect to a measure referred by the Legislative Assembly, a Senator appointed by the President of the Senate and a Representative appointed by the Speaker of the House."

ORS 251.205(2).

simple and understandable statement explaining the measure and its effect." ORS 251.215(1). The Secretary of State must conduct a hearing, after statewide notice, to provide opportunity for written or oral submission of suggested changes in the explanatory statement. ORS 251.215(2). If such suggestions are submitted, the committee must consider them and may revise the explanatory statement. ORS 251.215(3). If the committee fails to submit an explanatory statement, a statement prepared by the Legislative Counsel Committee is substituted under the same procedures. ORS 251.225. Apart from the official explanatory statement, there are provisions for printing arguments for and against a measure in the Voters' Pamphlet. ORS 251.245 - ORS 251.275.

■ *Judicial review.* ORS 251.235 provides for review of explanatory statements by this court in these terms:

"Any person dissatisfied with an explanatory statement for which suggestions were offered at the Secretary of State's hearing under ORS 251.215, may petition the Supreme Court seeking a different statement and stating the reasons the statement filed with the court is insufficient or unclear. If the petition is filed not later than the fifth day after the deadline for filing a revised statement with the Secretary of State, the court shall review the statement, hear arguments and certify an explanatory statement to the Secretary of State. The review by the Supreme Court shall be conducted expeditiously to insure the orderly and timely conduct of the election at which the measure is to be submitted to the voters. The statement certified by the court shall be the explanatory statement printed in the voters' pamphlet."

This section requires attention to two issues. First, petitioner MacAfee suggests that we should not consider the counter-petition of Oregonians for Wildlife Conservation because that petitioner did not first make his objections at the Secretary of State's hearing on the explanatory statement. However, as ORS 251.235 is written, it merely requires that the

challenged explanatory statement be one "for which suggestions were offered" at the hearing. The opening words "Any person . . ." do not limit petitions in this court to persons who offered such a suggestion at the hearing.

Second, the section requires a petitioner to state the reasons why the proposed explanatory statement is "insufficient or unclear." These adjectives are not quite the same as those describing the duty of the committee, which is to prepare an "impartial, simple and understandable statement explaining the measure and its effect." ORS 251.215. These criteria obviously overlap, but they are not identical. A statement will be "unclear" if it is not "understandable." A clear but complicated explanation of a complicated measure is hard to fault as "insufficient." But a good faith effort to keep a statement "simple" may render it "insufficient" by omission or oversimplification. Moreover, when a measure itself is unclear and subject to contested interpretations, a statement that purports to give the voter a clear explanation of "the measure and its effect" may not be "impartial." If a committee finds itself in genuine and serious doubt about a measure's meaning and effect, the impartial and understandable, if not simple, answer may be to say so and let the argumentative pages of the Voters' Pamphlet argue the point.

■    In any event, we do not believe that ORS 251.235 meant to call on this court to settle disputes over the meaning of a measure in reviewing and certifying explanatory statements, especially since Voters' Pamphlet statements in turn become "legislative" history when that meaning later is disputed by persons affected by the measure in a concrete case. At this stage, the court's scrutiny goes only so far as necessary to determine, not whether a more detailed or comprehensive explanatory statement might have been written, but whether the committee's statement falls short to the point of being "insufficient."

*The present dispute.* In the present case, there is a disagreement whether or not two sections of an initiative measure render its eventual effect doubtful. The measure proposes to license and for most purposes to forbid the sale or use of certain animal traps. Permits by the State Department of Agriculture could be issued to trap predatory animals in defined areas upon verification that the predators caused losses of livestock. After 1985, such traps could be sold or used only if the Oregon State Health Division found a danger to human health and safety.

Section 6 of the proposed measure reads:

"The sale and use of mouse, rat and gopher traps, as well as live 'box' traps shall be exempt from the provisions of this Act."

Section 16 of the measure would amend an existing statute, ORS 610.105, by omitting "trapping" as indicated in the brackets and adding the underlined words:

"ORS 610.105 Any person owning, leasing, oc-cupying, possessing or having charge of or dominion over any land, place, building, structure, wharf, pier or dock which is infested with ground squirrels and other noxious rodents or predatory animals, as soon as their presence comes to his knowledge, may, or his agent may, proceed immediately and continue in good faith to control them by poisoning[, trapping] or other appropriate and effective means, including trapping after obtaining the necessary trapping permit from the Department of Agriculture or the Oregon State Health Division in case of protection of human health and safety."

The disagreement between the two petitioners is whether the measure is susceptible to a future interpretation that would allow the Department of Agriculture or the Health Divison (or possibly another agency) to require a permit for the sale or use of mouse, rat, or gopher traps. The committee's explanatory statement proposes to incude this sentence, adopted from the ballot title earlier prepared by the Attorney General: "Would not forbid use or sale of mouse,

rat, gopher traps, or live 'box' traps." Petitioner MacAfee asks us to delete this sentence in the explanatory statement and substitute words equivalent to section 6 of the measure, quoted above. Petitioner Oregonians for Wildlife Conservation claims that while section 6 exempts such traps from the present measure, it does not necessarily preclude their regulation under other laws, and that section 16, also quoted above, either would actually require permits for such traps or at least leaves the matter in doubt. It therefore submits a diametrically opposite substitute for the disputed sentence, which would state that the measure would require permits to trap rats, mice, or gophers.

■      In view of our previous conclusion that our review under ORS 251.235 is not the time to resolve such disputes further than necessary to test the adequacy of the explanatory statement, we do not pursue the competing arguments here. The committee's explanatory statement would inform the public that this measure itself would not forbid the use or sale of the mentioned kinds of traps. We do not find this statement to be "insufficient or unclear," in the words of ORS 251.235, or not "impartial, simple and understandable" in the words of ORS 251.215. The explanatory statement was therefore certified to the Secretary of State.

Explanatory statement certified.