Argued and submitted August 21, Ballot Measure Explanatory Statement certified as modified August 29, 1990

William JUNE,
*Petitioner,*

*v.*

Barbara ROBERTS,
Charles Davis, John Frewing, Glenn E. Otto,
Gregory Kafoury and Lloyd Marbet,
*Respondents.*

(SC S37381)

797 P2d 357

John R. Faust, Jr., of Schwabe, Williamson & Wyatt, Portland, argued the cause and filed the petition for petitioner.

Ann Kelley, Assistant Attorney General, Salem, argued the cause for respondent Barbara Roberts, Secretary of State. With her on the answering memorandum were Dave

Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Peterson, Chief Justice, and Carson, Gillette, Van Hoomissen, Fadeley, and Unis, Justices.

GILLETTE, J.

## GILLETTE, J.

■     Petitioner, an elector of the State of Oregon, seeks review of a Ballot Measure Explanatory Statement.[1] Petitioner offered suggestions concerning the Statement at the hearing on the Statement held by the respondent Secretary of State[2] pursuant to ORS 251.215(2).[3] Because suggestions were made, petitioner has standing to bring this proceeding. We modify the Explanatory Statement to the extent set forth below.

The text of the Explanatory Statement is as follows:[4]

"This measure would halt operations at the Trojan Nuclear Plant on December 6, 1990.

---

[1] Review by this court of proposed Explanatory Statements is authorized by ORS 251.235:

"Any person dissatisfied with an explanatory statement for which suggestions were offered at the Secretary of State's hearing under ORS 251.215[(2)], may petition the Supreme Court seeking a different statement and stating the reasons the statement filed with the court is insufficient or unclear. If the petition is filed not later than the fifth day after the deadline for filing a revised statement with the Secretary of State, the court shall review the statement, hear arguments and certify an explanatory statement to the Secretary of State. The review by the Supreme Court shall be conducted expeditiously to insure the orderly and timely conduct of the election at which the measure is to be submitted to the electors. The statement certified by the court shall be the explanatory statement printed in the voters' pamphlet."

For a general discussion of the purpose of an explanatory statement and the manner in which it is to be prepared, see *Teledyne Industries v. Paulus*, 297 Or 665, 667-69, 687 P2d 1077 (1984).

[2] The Secretary of State, as the chief election officer of the state, is responsible for printing the Voters' Pamphlet of which the Ballot Measure Explanatory Statement is a part. ORS 246.110; 251.235. She therefore is an appropriate party respondent in this proceeding. *Teledyne Industries v. Paulus, supra,* n 1, 297 Or at 668-71; *see also Sollis v. Hand,* 310 Or 251, 253, 796 P2d 1188 (1990) (explaining why, in the alternative, the committee appointed to prepare the Ballot Measure Explanatory Statement would also be an appropriate party respondent).

[3] ORS 251.215(2) provides:

"Not sooner than the 100th nor later than the 95th day before the election, the Secretary of State shall hold a hearing in Salem upon reasonable state-wide notice to receive suggested changes to any explanatory statement. At the hearing any person may submit suggested changes orally or in writing. Written suggestions also may be submitted at any time before the hearing."

[4] As we here set it out, the text actually is slightly modified to correct two typographical errors pointed out in respondent's answering memorandum. (The word "required" in the third paragraph formerly was "require"; the word "voters" in the sixth paragraph formerly was "votes.") Counsel for petitioner, at oral argument, agreed.

"Before Trojan is allowed to operate again, the Oregon Energy Facility Siting Council must hold a hearing and on the basis of evidence received at the hearing, make three findings.

"The first finding required before Trojan can operate is that a permanent nuclear waste disposal facility must be licensed by the Federal Government and be ready and able to accept high-level radioactive waste.

"The second finding required before Trojan can operate is that Trojan Nuclear Plant operations must be deemed cost effective.

"The third finding required before Trojan can operate is that Trojan must be able to withstand major earthquakes without harm to the public. The plant must comply with earthquake protection requirements of the United States Nuclear Regulatory Commission that are in effect when the plant begins to operate. Before making the third finding, the Energy Facility Siting Council must have an independent geologic investigation and engineering study performed to identify and evaluate all geologic faults underneath and near the plant, the potential magnitude of subduction zone earthquakes and their effect on the plant and the adequacy of the plant design to withstand major earthquakes. The operator of the power plant must pay for this study.

"This measure can be repealed only if the legislature declares an emergency need for electricity which cannot be obtained from any alternative energy source, including conservation, and the voters approve the operation of the Trojan Nuclear Plant in a referendum.

"The Nuclear Regulatory Commission and the Oregon Department of Energy have existing regulatory authority over the operation of the Trojan Nuclear Plant."

Before we consider petitioner's specific arguments with respect to this Explanatory Statement, we shall briefly review the scope of our authority concerning this subject.

■ Under ORS 251.215(1), an Explanatory Statement must be "impartial, simple and understandable." Under ORS 251.235, this court reviews an Explanatory Statement to determine whether it is "insufficient or unclear." We do not resolve disputes over the meaning of the measure, but only determine whether the statement "falls short to the point of being 'insufficient.'" *MacAfee v. Paulus,* 289 Or 651, 655, 616 P2d 493 (1980). The court is not set at large by the statutes to

rewrite the statement just because the court would write the statement differently: "In reviewing the explanatory statement, the court should not invalidate it or modify it unless its insufficiency is beyond reasonable argument." *Teledyne Wah Chang Albany v. Powell,* 301 Or 590, 593, 724 P2d 319 (1986).

■     It follows from the foregoing that petitioner has the laboring oar in these proceedings. In the present case, petitioner has no quarrel with the clarity of the Explanatory Statement; his sole complaint is that it is not a sufficient statement of the measure's "effect." We do not believe that petitioner has met his threshold burden of showing, beyond reasonable argument, that the statement is insufficient in its explanation of the "effect" of the proposed measure.

Petitioner argues,

> "The statement is insufficient because it does not adequately state the effect of the measure. It does not state the most significant effect of the measure, which is that passage of the measure will close the Trojan Nuclear Power Plant until at least the year 2010."

To remedy this alleged defect, petitioner proposes that the second paragraph be amended by deleting the bracketed portion of the following phrase: "* * * the Oregon Energy Facility Siting Council must [hold a hearing and on the basis of evidence received at the hearing,] make three findings" and substituting for the deleted material the following words: "be able to." As a result, the second paragraph of the Explanatory Statement would read:

> "Before Trojan is allowed to operate again, the Oregon Energy Facility Siting Council must be able to make three findings."

Petitioner argues that this change is necessary for the following reason:

> "The central vice of the present statement is that it conveys the idea that Trojan will be closed only long enough to permit the Council to hold a hearing. In fact, the measure will close Trojan for at least 20 years. That effect is due to the fact that the first required finding cannot be made until the federal government opens a permanent nuclear waste disposal facility, and the federal government went on record in 1989 to demonstrate that it has no plans to open such a facility before at least the year 2010 * * *. The reader of the explanation would be substantially misled if he/she were to conclude that

the effect of this measure will be a brief closure, lasting only long enough to conduct a hearing."

It may be true that, if a voter were to read the Explanatory Statement to the same effect that petitioner reads it, the vice of which he complains would be present. Our problem is that we do not read the Explanatory Statement that way. We find nothing that implies that the Energy Facility Siting Council hearing will be held soon, or that (when it is held) the outcome will be to relicense Trojan immediately. The only clear effect of passage of the measure would be to shut down Trojan. The Explanatory Statement says that. Any speculation as to when (if ever) Trojan would be permitted to start up again would be just that — speculation. The committee that prepared the Explanatory Statement was correct to avoid such speculation.

Petitioner would amend the third paragraph of the Explanatory Statement by adding the following sentence:

"The effect of this requirement will be to close the Trojan Nuclear Power Plant until at least the year 2010, because the Federal Government does not plan to open a permanent nuclear waste disposal facility until at least the year 2010."

As we already have indicated, we think this statement is speculative and does not belong in the official Explanatory Statement.[5] Arguments about effects of the measure, including speculation as to when, if ever, the federal government will have a permanent disposal site available to receive radioactive, spent fuel from Trojan and other nuclear generating plants around the nation, may still be put before the voters through the use of arguments printed in the Voters' Pamphlet pursuant to ORS 251.255.[6]

---

[5] During oral argument, counsel for Petitioner agreed that inclusion of a specific date, "2010," in Petitioner's proposed amendment probably was inappropriate. Instead, counsel argued that the Explanatory Statement should be amended to state that Trojan would be closed for an "uncertain" or "indefinite" period of time. This might well improve the clarity of the Explanatory Statement to some degree, but we do not think it demonstrates a fatal lack of clarity in the statement as it now is written.

[6] ORS 251.255 provides, in part:

"Not later than the 70th day before a general election or the 68th day before a special election held on the date of any primary election at which a state-wide measure is to be voted upon, any person may file with the Secretary of State a typewritten argument supporting or opposing the measure."

The Ballot Measure Explanatory Statement filed with the Secretary of State pursuant to ORS 251.215(3), as modified in the particulars set out in this opinion, is certified to the Secretary of State for printing in the Voters' Pamphlet.

Ballot Measure Explanatory Statement certified as modified.

Pursuant to ORAP 11.30(10) and notwithstanding ORAP 9.25(1), this certified Ballot Measure Explanatory Statement will become effective when the appellate judgment issues. The State Court Administrator shall issue the appellate judgment on September 5, 1990, unless a petition for reconsideration is both filed with and physically received by the Office of the State Court Administrator by 5 p.m. on September 4, 1990. A timely petition for reconsideration will stay issuance of the appellate judgment until the court acts on all timely petitions for reconsideration.