Submitted on the record and petition for review of Ballot Measure Explanatory Statement filed August 15, Ballot Measure Explanatory Statement certified September 6, 1994

Kenneth LEWIS,
*Petitioner,*

*v.*

Phil KEISLING,
Secretary of State
of the State of Oregon,
Scott Lively, Kathy Phelps,
Kathleen Beaufait, Julie Davis
and Katherine McDowell,
*Respondents.*

(SC S41550)

879 P2d 857

Scott J. Meyer, of the ACLU Foundation of Oregon, Inc., Portland, filed the petition for petitioner.

Katherine A. McDowell, Portland, filed the response *in propria persona* and for respondent Julie Davis.

Michael D. Reynolds, Assistant Solicitor General, Salem, waived appearance for respondent Phil Keisling.

No appearance for respondents Scott Lively, Kathy Phelps, and Kathleen Beaufait.

Before Carson, Chief Justice, Gillette, Van Hoomissen, Fadeley, Unis, and Durham, Justices, and Richardson,* Justice pro tempore.

GILLETTE, J.

Unis, J., dissented and filed an opinion in which Fadeley and Durham, JJ., joined.

---

* The Honorable William L. Richardson, Chief Judge, Court of Appeals, sitting by appointment pursuant to ORS 1.600.

## GILLETTE, J.

This is an original proceeding for judicial review of a Ballot Measure Explanatory Statement[1] for Ballot Measure 13, a proposed constitutional amendment that is to be submitted to the voters at the general election in November. Petitioner is an elector dissatisfied with the Explanatory Statement. Respondent Keisling, as Secretary of State, is responsible for placing an Explanatory Statement for the ballot measure in the Voters' Pamphlet. The other respondents make up the committee that, pursuant to ORS 251.215, prepared the Explanatory Statement.[2] The measure amends Article I of the Oregon Constitution by adding a section dealing with government treatment of the subject of homosexuality. *See Mabon v. Keisling*, 317 Or 406, 856 P2d 1023 (1993) (explaining, in some detail and in the context of a ballot title review, the operation of the proposed constitutional provision). We conclude that the Explanatory Statement is not deficient in the manner argued by petitioner. We therefore certify the Explanatory Statement filed by the committee.

As already noted, the text of the ballot measure now before us, together with a review of the nature and purpose of the measure, are set out at length in *Mabon v. Keisling, supra*. We shall not repeat those materials here. The committee created to write an Explanatory Statement for the measure filed the following statement:

---

[1] For a description of Explanatory Statements, their purpose, and the manner in which they are prepared, see *Teledyne Industries v. Paulus*, 297 Or 665, 667-69, 687 P2d 1077 (1984). For a discussion of this court's methodology in examining its scope of review concerning Explanatory Statements, see *June v. Roberts*, 310 Or 244, 247-48, 797 P2d 357 (1990).

[2] Two members of the respondent committee, Julie Davis and Katherine McDowell, dissented from the Explanatory Statement filed by the other respondent members of the committee appointed to draft the Explanatory Statement. Under the pertinent statute, ORS 251.215(4), the reasons for their dissent are not disclosed. Those two members have, however, perhaps given us a glimpse of their views by filing a document, entitled "Response in Support of Petition to Review Explanatory Statement," in the present proceeding. We refer to the paper filed as a "document," rather than as a "response," because it does not attempt to defend the present Explanatory Statement. Instead, it argues for a somewhat different modification of the Explanatory Statement than does the petitioner. To the extent that the document is intended to be a separate petition to review the Explanatory Statement, it is filed too late and will not be considered. To the extent that it is intended to be a brief in response to the petition to review the Explanatory Statement, we consider it for such assistance as it provides.

### "MEASURE 13 EXPLANATORY STATEMENT

"The measure would amend the Oregon Constitution.

"The measure prohibits state and local governments from creating classifications based on homosexuality. These governments could not enact laws or policies establishing affirmative action, quotas, or class status based on homosexuality. Governments could not enact laws or policies using classifications such as 'sexual orientation,' 'domestic partnerships' or similar designations based on homosexuality. Governments could not grant marital status or spousal benefits on the basis of homosexuality.

"State and local governments could not advise or teach children, students, or employees that homosexuality equates legally or socially with race, religion, or other protected classifications. Governments could not spend public funds that directly or incidentally promote or express approval of homosexuality.

"A state or local government could take personnel action based on a public employee's private lawful sexual behavior only if that behavior disrupts the work place or otherwise violates this measure.

"State and local governments could not deny business licenses, permits or services otherwise due under existing statutes or limit the holding or exercise of constitutional rights.

"The measure would place certain limits on library materials referencing homosexuality by limiting the availability of these materials to adults only. Adults would have access to library materials referencing homosexuality if they are written for adults and meet local standards as established through existing library review procedures.

"This measure does not require any action by the legislature in order to take effect."

■ ■    An Explanatory Statement placed in the Voters' Pamphlet is supposed to be "an impartial, simple and understandable statement explaining the measure." ORS 251.215. Under ORS 251.235, this court reviews a challenged Explanatory Statement to determine whether it is "insufficient or unclear." A statement is "insufficient" if it is not impartial or if it is "potentially misleading." *Homuth v. Keisling*, 314 Or 214, 220, 837 P2d 532 (1992). Petitioner argues:

"The explanatory statement filed by the committee fails to meet this standard of review because it does not explain that the measure prevents state and local governments from prohibiting discrimination against a defined class of citizens[, *i.e.*, homosexuals]. Because the statement omits an explanation or even a reference to this major component of the measure, it is not 'impartial' and it is 'insufficient and unclear.' Moreover, the statement actually misleads voters by omitting an explanation of this important aspect of the measure."

To remedy this alleged deficiency, petitioner (and the dissent) would have this court insert into the Explanatory Statement between the present second and third sentences of that statement the following sentence: "State and local governments could not enact laws or policies which prohibit discrimination based on homosexuality." The dissent agrees with that suggestion. For the reasons that follow, we do not.

It is true that, as a general proposition, the idea that petitioner wishes to have inserted in the Explanatory Statement is a correct description of one of the effects of the ballot measure. We so held in *Mabon v. Keisling, supra,* 317 Or at 411-12, 413-14. But the important thing about the *Mabon* case is that we also held in that opinion that it was inappropriate, in the context of a ballot title, for the Attorney General to use the word "discrimination" in an impartial description of the proposed measure, because use of such a word potentially "loaded" the inquiry and potentially created a "pejorative" description of the measure. *Id.* at 416.

We offered two reasons for our ruling. The first was a matter of English — the word was being used in a phrase that had the undesirable effect of creating a virtually unreadable triple negative. The second reason spoke precisely to the issue presented in this case. We said:

"[T]he use of the word 'discrimination,' while accurate, is better avoided (if possible), because of the negative context in which that word normally is used. While surely not intended that way by the Attorney General, saying that governments cannot oppose discrimination can be a 'loaded' description. The same ideas are communicated in a less pejorative manner by * * * substituting the following: 'create classifications based on homosexuality.' "

*Ibid.* Taking us at our word, the committee in this case used virtually the same phrase, "creating classifications based on homosexuality," in the present Explanatory Statement.

Unlike petitioner and the dissent, we can perceive no principled basis for holding, as petitioner's argument and the dissent would require us to hold, that a term that as a matter of law had to be taken *out* of a Ballot Title has suddenly become so impartial that now it must, as a matter of law, be put *into* an Explanatory Statement. Both documents, the Ballot Title and the Explanatory Statement, are intended to provide the same kind of unbiased information to the voter. The greater length of the Explanatory Statement permits a more detailed examination of a proposed measure, but length does not change the nature of the wording that petitioner and the dissent wish to include: That wording remains potentially "loaded" and "pejorative."[3]

The statement filed by the committee sufficiently and clearly describes the effects of the proposed measure, albeit in wording different than that sought by petitioner. No change to the Explanatory Statement is warranted.

Ballot Measure Explanatory Statement certified.

Pursuant to ORAP 1.20(4) and notwithstanding ORAP 11.30(9), this opinion will become effective when the appellate judgment issues. The State Court Administrator shall issue the appellate judgment at noon on September 8, 1994, unless a petition for reconsideration is both filed with and physically received by the Office of the State Court Administrator by that time. A timely petition for reconsideration will stay issuance of the appellate judgment until the court acts on all timely petitions for reconsideration.

**UNIS, J.,** dissenting.

The result in this case, in my view, is so contrary to reason and to the universally understood plain meaning of Ballot Measure 13 that I feel compelled to dissent.

The Explanatory Statement for an initiated measure must be "impartial, simple and understandable" and not

---

[3] Two of the three dissenters joined in the *Mabon* decision, including its labeling of the use of the word, "discrimination," as potentially "loaded" and "pejorative."

"insufficient or unclear." ORS 251.215(1); ORS 251.235; *Conkling v. Keisling*, 316 Or 390, 394-95 n 2, 852 P2d 183 (1993). A statement is "insufficient" if it is not impartial or if it is "potentially misleading." *Homuth v. Keisling*, 314 Or 214, 220, 837 P2d 532 (1992). *See also June v. Roberts*, 310 Or 244, 797 P2d 357 (1990) (same); *Sollis v. Hand*, 310 Or 251, 796 P2d 1188 (1990) (same).

In my view, the Explanatory Statement for Ballot Measure 13,[1] as filed by the committee and today certified by the majority, is insufficient and misleading, because it does not explain that the measure prevents state and local governments from prohibiting discrimination against a defined class of citizens. It cannot be disputed that a major effect of the measure is that it prevents governments from barring discrimination against homosexuals.[2] This court recognized that repeatedly in *Mabon v. Keisling*, 317 Or 406, 856 P2d 1023 (1993), when considering challenges to the ballot title for this measure. In *Mabon*, the court stated:

> "In this case, we do not agree that the Attorney General has engaged in 'speculation' in describing the measure as one that will prevent governments from barring discrimination against homosexuals. As discussed more fully below, there can be no question that will be one of the effects of the measure." 317 Or at 411-12.

The court went on to say:

> "As we noted above (and as we explained more fully below), we do not agree with Mabon's contention that the Attorney General has engaged in speculation in concluding that one effect of the measure will be to prevent governments from barring discrimination against homosexuals. That effect is certain. Nor do we agree with Mabon that any such effect will be 'secondary.' " *Id.* at 413-14.

---

[1] The text of Ballot Measure 13 appears in this court's opinion in *Mabon v. Keisling*, 317 Or 406, 409-10, 856 P2d 1023 (1993).

[2] This proceeding does not decide the effect of Ballot Measure 13 for future cases and controversies. Only petitioner appeared in this proceeding. No party disputes petitioner's argument that Ballot Measure 13 prevents governments from legislating protection for persons based on homosexuality, and, for that reason, the majority can and does assume, for purposes of this case, that that argument is correct. Whether that argument is correct as a matter of law is a question that this court can only answer in the context of an actual case arising in the event that Ballot Measure 13 is adopted by the voters.

The court further stated:

> "[A]s we have noted already, the Attorney General's descrip-
> tion of the measure as that will prevent governments
> from barring discrimination against homosexuals is not
> based on speculation. Neither is such an effect 'secondary.'
> On the contrary, the idea expressed in the challenged sen-
> tence flows directly from the wording of the measure itself
> and describes one of the major effects of the measure." *Id.* at
> 414.

The measure's clear meaning and purpose are to prohibit
governments from enacting anti-discrimination laws. That
prohibition, as this court stated, "flows directly from the
wording of the measure itself." *Id.* An Explanatory State-
ment in the Voters' Pamphlet that leaves out an explanation
of such a major effect of the measure will mislead the voters.
Because the Explanatory Statement omits an explanation or
even a reference to this universally understood major effect of
the measure,[3] it is not "impartial," and it is "insufficient and
unclear."

The second sentence of the Explanatory Statement,
as filed by the committee, reads: "The measure prohibits
state and local governments from creating classifications
based on homosexuality." The committee borrowed this sen-
tence from the ballot title approved by this court in *Mabon v.
Keisling, supra.* This sentence is legally accurate but not very
"explanatory," because its key terms, "creating classifica-
tions," mean so little to average voters. Non-lawyers would
never summarize a measure's major effect by using such
complex legal jargon. That phrasing may have worked to keep
the court's certified ballot title within the 85-word limit that
governs ballot titles, but that word restriction does not apply
here. In other words, this court's rationale for choosing a
curt, legalistic phrase like "creating classifications," instead
of using more words to more clearly and completely explain a

---

[3] Each member of this court and nine members of the Court of Appeals
recognize that a "certain," "major," or "primary" effect of Ballot Measure 13 is to
"prohibit state and local governments from preventing discrimination against
homosexual persons." *Mabon v. Keisling*, 317 Or 406, 411-14, 856 P2d 1023 (1993);
*Lowe v. Keisling*, 130 Or App 1, 4, 882 P2d 91 (1994) (In banc, Haselton, J., not
participating). *See also 1994 Voter's Guide*, The Oregonian (Portland), September 6,
1994, at B6 (stating, in summarizing Ballot Measure 13, that "[t]he initiative would
prohibit state or local governments from extending specific anti-discrimination
protections to homosexuals").

major effect of Ballot Measure 13, does not apply in the explanatory statement context.

The second sentence is not "wrong," and should not be altered. However, it is of limited utility in accurately explaining the major effects of this measure in plain, *understandable* language.

The third sentence of the Explanatory Statement says:

> "These governments could not enact laws or policies establishing affirmative action, quotas, or class status based on homosexuality."

This sentence is an accurate statement of *one* of the measure's major effects. Petitioners do not attack it. This sentence addresses laws that create "affirmative action" and "quotas" for homosexuals. From the third sentence, the reader learns that the measure would prohibit the enactment of laws that grant special favorable treatment because of sexuality.

The fourth and fifth sentences of the committee's Explanatory Statement say:

> "Governments could not enact laws or policies using classifications such as 'sexual orientation,' 'domestic partnerships' or similar designations based on homosexuality. Governments could not grant marital status or spousal benefits on the basis of homosexuality."

None of the existing sentences discloses one of the most significant effects of the measure. If enacted, the measure would forbid state and local governments from enacting laws that prohibit discrimination against persons because of homosexuality. Such laws would (and do) prohibit actions that *disfavor* or *deny* rights and privileges (*e.g.*, employment rights) because of homosexuality. The third sentence does not disclose this fact, because it only addresses laws, like "quota" laws, that mandate *affirmative favorable* treatment because of homosexuality. Lawyers and judges can read the second sentence (*i.e.*, "creating classifications") to refer, at least in an oblique way, to the topic of prohibition of differential treatment. However, it fails to disclose or even suggest, in terms that lay voters can *understand*, the prohibitory effect of the measure on the power of government to legislate

protection for citizens against acts or conditions that *disfavor* them because of homosexuality. Because this failure to disclose concerns one of the major effects of the measure, the explanatory statement is inaccurate and incomplete.

The failure to disclose is also misleading. The third sentence states that the measure would ban laws that require *favorable* treatment (*e.g.*, "quotas" and "affirmative action"). Voters who might desire to ban such favorable treatment for homosexuals might think twice and vote against the measure if they knew that it also restricted government's ability to legislate protection against *unfavorable* treatment of citizens due to homosexuality. The present explanatory statement is misleading, because its third sentence creates the false impression that it only forbids government from passing laws that affirmatively promote or favor homosexuality. The sentence suggested by petitioner would fill that gap and provide specific information that is both accurate and material to an intelligent decision on the measure. That is precisely the kind of information that the Voters' Pamphlet Explanatory Statement was designed to convey.

To be complete and accurate, and therefore impartial and sufficient, the Explanatory Statement should also explain that the measure prohibits state and local governments from creating laws or policies to prevent discrimination against homosexuals. This court determined that that consequence is a "certain effect," not a "secondary effect," when it reviewed the ballot title for Ballot Measure 13. *Mabon v. Keisling, supra*, 317 Or at 413-16. We abbreviated the description of that "certain effect" in the summary of the ballot title to satisfy the 85-word limit, ORS 250.035(1)(c). The 500-word limit that governs an Explanatory Statement, ORS 251.215(1), permits us to describe this major effect of Ballot Measure 13 in clearer terms. This court's duty is to certify an Explanatory Statement to the Secretary of State that is "impartial, simple and understandable." In so doing, the most direct and understandable wording should be used. The court should not avoid using a term such as "discrimination," which expresses clearly and accurately a major effect of the measure, in order to substitute more "polite" language that fails to accurately and completely convey a universally

recognized major effect of the measure. This court's duty to certify an Explanatory Statement that is not potentially misleading requires that we describe the major effect of Ballot Measure 13 in clear language that the voters will understand. Because the statement omits a description of that major effect of the measure, while including a description of parallel components of the measure that preclude affirmative action and quotas, the Explanatory Statement is not "impartial," and it is insufficient and misleading.

For the above reasons, I conclude that the Explanatory Statement for Ballot Measure 13 is deficient. In my view, this court should modify the Explanatory Statement, as submitted by the committee, and certify a modified Explanatory Statement that includes the following sentence in the text between the second and third sentences: "State and local governments could not enact laws or policies that prohibit discrimination based on homosexuality." Such a sentence would describe a certain, major effect of Ballot Measure 13 in plain English, which the voters would understand.

I respectfully dissent.

Fadeley and Durham, JJ., join in this dissenting opinion.