Submitted on petition for review filed November 22, 1994, petition for review dismissed as moot March 2, 1995

Ellen LOWE,
David Fidanque, Greg Evans,
David Allen, Dominick Vetri,
John Baker, Bonnie Tinker, and Doretta Schrock,
*Petitioners on Review,*

*and*

CITY OF PORTLAND
*Respondent (below),*

*v.*

Phil KEISLING,
Secretary of State of
the State of Oregon,
*Respondent on Review,*

*and*

Lon MABON,
*Appellant/Cross-Respondent (below).*

(CC 93C-11972; CA A84110; SC S41790)

889 P2d 916

■

Charles F. Hinkle and Katherine A. McDowell, ACLU Foundation of Oregon, Inc., Portland, filed the petition for petitioners. With them on the petition was Suzanne B. Goldberg, Lambaa Legal Defense and Education Fund, New York, New York.

No appearance *contra.*

Michael H. Simon, Portland, filed a brief for *amici curiae* Jewish Federation of Portland, American Jewish Committee, and Anti-Defamation League of B'nai B'rith.

Unis, J., dissented and filed an opinion in which Fadeley and Durham, JJ., joined.

## MEMORANDUM OPINION

Petitioners seek judicial review of a decision by the Court of Appeals that directed that a certain measure be placed on the ballot for the November 1994 general election. *Lowe v. Keisling*, 130 Or App 1, 882 P2d 91 (1994). That election has been held. The proposed measure failed. The petition for review therefore is moot.

The petition for review is dismissed as moot.

**UNIS, J.,** dissenting.

I agree with the court that this case is moot. The case became moot because the election on the challenged initiative measure has already been held, and the measure was defeated in the November 8, 1994, statewide general election. My disagreement is with the court's disposition of the case. In my view, this court should allow the petition for review, vacate the decision of the Court of Appeals and the judgment of the circuit court, and then dismiss the case as moot. I, therefore, respectfully dissent.

A brief statement of the history and status of this case is helpful to an understanding of my disagreement with the court. Plaintiffs' amended complaint seeks declaratory and injunctive relief pursuant to ORS chapter 28, ORS 246.910, and 42 USC § 1983. Plaintiffs' action concerns Ballot Measure 13, a proposed initiative petition dealing with government treatment of the subject of homosexuality.[1] The measure was filed with the Secretary of State on May 6, 1993, and, if approved by the electorate, would have added a section to Article I of the Oregon Constitution. Plaintiffs' complaint asserts that the proposed initiative petition would violate (1) the "one subject only" provision of Article IV, section 1(2)(d), of the Oregon Constitution, (2) Article XVII, section 2, of the Oregon Constitution, because it proposes to revise, rather than to amend, the Oregon Constitution, (3) the Guaranty Clause of Article IV, section 4, of the federal constitution, because that clause assertedly prohibits the use of the initiative process to proposed measures that would appeal

---

[1] For a review of the nature and purpose of Ballot Measure 13, *see Mabon v. Keisling*, 317 Or 13, 856 P2d 1023 (1993). *See also Lewis v. Keisling*, 320 Or 13, 879 P2d 857 (1994) (discussing Ballot Measure 13 in the context of a judicial review of the Voters' Pamphlet explanatory statement).

to the passions of the people and would disadvantage a specific minority group, and (4) one or more of the provisions of the First Amendment, equal protection, and due process rights under the federal constitution. Plaintiffs sought to enjoin the Secretary of State from notifying the county clerks that the measure proposed by the petition was to be placed on the November 8, 1994, ballot.

On May 3, 1994, the circuit court entered an amended judgment, dismissing the counts of plaintiffs' complaint that raised federal constitutional issues. However, the amended judgment declared that the proposed initiative "embraces more than one subject, in violation of Article IV, section 1(2)(d) of the Oregon Constitution." The circuit court further declared that the proposed initiative would revise, rather than amend, the Oregon Constitution and, therefore, could not be submitted to a vote of the people without approval by a two-thirds majority of the legislature. Finally, the amended judgment "enjoined [the Secretary of State] from certifying the measure proposed by the petition * * * to the county clerks of Oregon for placement on the ballot."

The Secretary of State and Lon Mabon appealed the circuit court's amended judgment declaring that the proposed initiative violates Article IV, section 1(2)(d), of the Oregon Constitution and enjoining the Secretary of State from certifying the measure for placement on the ballot. Plaintiffs cross-appealed the dismissal of the counts that raised federal constitutional issues. Secretary of State Keisling filed a motion to expedite in the Court of Appeals on the ground that, if the measure in question were to be on the November 1994 ballot, a final decision reversing the trial court must issue no later than September 8, 1994. In lieu of acting on the motion to expedite, the Court of Appeals, by amended order dated July 14, 1994, certified the appeal to this court pursuant to ORS 19.210 *et seq*. On July 27, 1994, this court entered an amended order declining to accept certification of the appeal.

On September 1, 1994, twelve days after oral argument before a three-judge panel of the Court of Appeals on August 19, 1994, the Court of Appeals rendered an *in banc*

decision (with a three-judge concurrence) that permitted the measure to be placed on the ballot. *Lowe v. Keisling*, 130 Or App 1, 882 P2d 91 (1994). The election on the initiative measure was held at the statewide general election on November 8, 1994, and the measure was defeated. Plaintiffs then filed a petition for review in this court on November 22, 1994,[2] claiming that, notwithstanding the rejection of the measure by the electorate, this case is justiciable and that, if this court determines otherwise, this court should vacate the Court of Appeals' decision so that it will have no precedential effect.

In *Brumnett v. PSRB*, 315 Or 402, 406, 848 P2d 1194 (1993), this court said that "[c]ases * * * in which a court's decision no longer will have a practical effect on or concerning the rights of the parties" are moot. Given the electorate's rejection of Ballot Measure 13, the underlying legal questions presented by the petition for review are now moot.

The question then presented is: What disposition should this court make of this case at this time? Concluding that the case is moot, the court has chosen only to dismiss the petition as moot. That choice, without more, permits the Court of Appeals' decision to have precedential effect. Implicitly, the choice made by the court rejects the well-established general principle, at least as it exists in the federal law, that vacatur is appropriate for those judgments whose review is prevented through happenstance — that is to say, where a controversy presented for review has become moot due to circumstances not attributable to any of the parties. *See United States v. Munsingwear, Inc.*, 340 US 36, 71 S Ct 104, 95 L Ed 36 (1950) (when a case is mooted through no fault of the parties, the maintenance of the judgment may be prejudicial to the parties challenging such a judgment on appeal, and the judgment should be vacated). When a party is prevented from obtaining appellate review through no fault of its own, the *Munsingwear* principle "clears" the path for future relitigation of the issues between the parties and eliminates a judgment, review of which was prevented through happenstance.

---

[2] The petition for review was filed on time, pursuant to court-approved extensions of time.

Professor Tribe describes the jurisprudence of the Supreme Court of the United States on vacatur:

"An order to vacate a federal judgment below with directions to dismiss the complaint because mootness has evolved on appeal is known as a 'Munsingwear order,' after *United States v. Munsingwear, Inc.*, 340 U.S. 36, 39-40 & n 2 (1950), in which the Supreme Court vacated a judgment and directed dismissal of a price-fixing action because the commodity in question had been decontrolled during the course of the appeal. The effect of a Munsingwear order is to deprive the decision below of any precedential value. See R. Stern, E. Gressman & S. Shapiro, Supreme Court Practice 722-24 (6th ed. 1986). For a recent case of unusual significance disposed of by such an order see Burke v. Barnes, 107 S.Ct. 734, 737 (1987) (vacating judgment of court of appeals and directing that district court dismiss as moot congressmen's suit challenging presidential 'pocket veto' of bill linking military aid to El Salvador to that country's human rights record, on the ground that the bill by its own terms had expired during the appeal, whether or not it had previously been properly enacted into law). See also National Organization for Women v. Idaho, 459 U.S. 809 (1982) (vacating decision striking down as unconstitutional a congressional joint resolution extending time to ratify the proposed Equal Rights Amendment, after the extension had passed without the requisite number of state ratifications, and directing dismissal of complaint as moot). When late-developing mootness appears on appeal from a state court decision, the Supreme Court typically vacates and remands for whatever further proceedings the state court deems proper. See, e.g., DeFunis v. Odegaard, 416 U.S. 312, 320 (1974)." Tribe, American Constitutional Law 83 n 4, § 3-11 (2d ed 1988).

Recently, in *U.S. Bancorp Mortgage Company v. Bonner Mall Partnership*, 513 US ____, 115 S Ct 386, 130 L Ed 2d 233 (1994) (*Bonner Mall*), the Supreme Court of the United States discussed the appropriateness of vacatur by federal courts of a judgment under review when a case has become moot. In that case, the Supreme Court held that mootness by reason of settlement after appeal is filed or certiorari sought does not justify vacatur by a federal appellate court of a judgment under review in the absence of exceptional circumstances.[3] The Court stated, however:

---

[3] In *Banister Continental Corp. v. NW Pipeline Corp.*, 301 Or 763, 724 P2d 822

"The parties in the present case agree that vacatur must be decreed for those judgments whose review is, in the words of *Munsingwear*, 'prevented through happenstance' — that is to say, where a controversy presented for review has 'become moot due to circumstances unattributable to any of the parties.' *Karcher v. May*, 484 U.S. 782, 82, 83, 108 S Ct 388, 98 L Ed 2d 327 (1987). * * *

"* * * * * *

"The reference to 'happenstance' in *Munsingwear* must be understood as an allusion to this equitable tradition of vacatur. A party who seeks review of the merits of an adverse ruling, but is frustrated by the vagaries of circumstance, ought not in fairness be forced to acquiesce in the judgment." *Id.*, 130 L Ed 2d at 240, 242.

In *Bonner Mall*, the Supreme Court noted that it stands by the *Munsingwear* principle "that mootness by happenstance provides sufficient reason to vacate." *Id.*, 130 L Ed 2d at 242 n 3.

I would apply the *Munsingwear* principle to the circumstances of this case.[4] This controversy became moot through no fault of plaintiffs. Because of mootness, plaintiffs have lost their opportunity to seek review of this case by this court. But for mootness, the decision of the Court of Appeals would deserve further review, apart from whether it is ultimately held right or wrong.[5] In Oregon Rules of Appellate Procedure (ORAP) 9.07, this court has provided guidance on the considerations that may persuade this court to take review. But for mootness, this case presents many review-worthy issues of public interest, including significant state and federal constitutional issues involving the initiative process. The resolution of the important issues raised in this case

---

(1986), this court vacated the decision of the Court of Appeals and dismissed the appeal when, after argument of the case before this court, the parties reached a settlement agreement.

[4] Because the *Bonner Mall* decision is based on the Supreme Court's supervisory power over federal courts, it does not control state court practice with respect to vacatur.

[5] The Court of Appeals, under difficult circumstances and after certification to this court was denied, rendered a major *in banc* decision in a matter of 12 days from oral argument to decision. The body politic of the state was well served by the court's swift adjudication, regardless of its outcome.

has external effects that transcend the interests of the litigants.

In summary, without expressing an opinion on the merits of this case, the circumstances of this case justify vacatur by this court of the decision of the Court of Appeals and the judgment of the circuit court. I would, therefore, allow the petition for review, vacate the decision of the Court of Appeals and the judgment of the circuit court, and dismiss the case as moot. I, therefore, respectfully dissent.

Fadeley and Durham, JJ., join in this dissenting opinion.