Argued and submitted August 18, ballot measure explanatory statement certified as modified August 27, 1998

Warren C. DERAS,
*Petitioner,*

*v.*

Hardy MYERS,
Attorney General,
Phil Keisling, Secretary of State,
and Helen Hill, Shea Grimm,
Catherine Dexter, Jim Wheeler,
and Michael Schrunk, Members,
Citizens Explanatory Statement
Committee for Measure 58,
*Respondents.*

(SC 45581)

962 P2d 692

Warren C. Deras, petitioner *pro se*, argued the cause and filed the petition.

Helen Hill and Shea Grimm, respondents *pro se*, argued the cause and filed answering memoranda.

Michael D. Reynolds, Solicitor General, waived appearance for respondents Myers and Keisling.

No appearance for respondents Dexter, Wheeler and Schrunk.

Before Carson, Chief Justice, and Gillette, Van Hoomissen, Durham, Kulongoski, and Leeson, Justices.

GILLETTE, J.

Durham, J., dissented and filed an opinion.

## GILLETTE, J.

In this original proceeding, petitioner challenges the explanatory statement for 1998 Ballot Measure 58, a measure concerning the circumstances under which an adult adopted person can obtain a copy of his or her original birth certificate. *See* ORS 251.205 (requiring selection of committee of five citizens to prepare explanatory statement for measures proposed by initiative or referendum); ORS 251.215 (setting out procedures for preparing and filing explanatory statement).

This court conducts judicial review of ballot title explanatory statements pursuant to ORS 251.235, which provides:

"Any person dissatisfied with an explanatory statement for which suggestions were offered at the Secretary of State's hearing under ORS 251.215, may petition the Supreme Court seeking a different statement and stating the reasons the statement filed with the court is insufficient or unclear. If the petition is filed not later than the fifth day after the deadline for filing a revised statement with the Secretary of State, the court shall review the statement, hear arguments and certify an explanatory statement to the Secretary of State. The review by the Supreme Court shall be conducted expeditiously to insure the orderly and timely conduct of the election at which the measure is to be submitted to the electors. The statement certified by the court shall be the explanatory statement printed in the voters' pamphlet."

*See also Lewis v. Keisling*, 320 Or 13, 16, 879 P2d 857 (1994) (further explaining this court's standard of review). For the reasons that follow, we conclude that two of petitioner's arguments are well taken. Accordingly, we modify the statement in the manner set out below.

Ballot Measure 58 as submitted provides:

"Upon receipt of a written application to the state registrar, any adopted person 21 years of age and older born in the state of Oregon shall be issued a certified copy of his/her unaltered, original and unamended certificate of birth in the custody of the state registrar, with procedures, filing fees, and waiting periods identical to those imposed upon

non-adopted citizens of the State of Oregon pursuant to OS [*sic*] 432.120 and 432.146. Contains no exceptions."

The revised explanatory statement filed by the committee of five citizens under ORS 251.215(3) states:

"This measure changes existing law to allow an adopted person 21 years of age or older to obtain a copy of the person's original birth certificate. Current Oregon law prohibits the release of an original birth certificate which may provide birth information to an adopted person without a court order. The law currently requires that upon receipt of a decree of adoption or a report of adoption from a court, the state registrar shall issue a new birth certificate unless the court, the adoptive parents or the adopted person requests otherwise. The new birth certificate may not provide accurate birth information and the original birth certificate shall not be subject to inspection except by court order.

"This measure requires that upon receipt of a written application the state registrar shall provide a copy of the original birth certificate which may provide accurate birth information to an Oregon born adopted person 21 years of age or older. This measure requires that the procedures, filing fees and waiting periods for certified copies of original birth certificates be the same for requests by adopted persons as for non-adopted persons.

"This measure applies to persons adopted in the past or in the future. There are no exceptions to this measure."

■ Petitioner first argues as a blanket criticism that the explanatory statement "does not correctly explain the difference between an original birth certificate of an adoptee and the amended birth certificate." The short answer to that contention is that, given the limited nature of the measure and the precise and limited right that it creates for a defined class of persons, the five-person committee was under no obligation to offer any explanation of the difference between those two kinds of birth certificates.

■ Petitioner argues more specifically that the explanatory statement is inaccurate, and therefore insufficient, in stating variously that the original birth certificate "may provide accurate birth information" and the amended birth certificate "may not provide accurate birth information." We

agree with that argument. Information provided by the parties in their submissions and at oral argument establishes that neither birth certificate necessarily will be more accurate than the other and that, in any event, the purpose of the measure is to make the original birth certificate available to adult adopted persons, regardless of its accuracy. Under those circumstances, the explanatory statement should not be couched in terms of the accuracy or inaccuracy of the original or amended birth certificates.

The foregoing defect appears in two places in the explanatory statement. The last sentence of the first paragraph of the explanatory statement provides: "The new birth certificate may not provide accurate birth information and the original birth certificate shall not be subject to inspection except by court order." As noted, the first part of that sentence is inappropriate and should be deleted. In addition, the second part of the sentence is redundant of material appearing elsewhere in the explanation, so deleting the balance of the sentence will cause no change to the substantive content of the statement. Accordingly, we delete that sentence.

The second reference to the accuracy of birth certificates appears in the first sentence of the second paragraph of the explanatory statement, which states: "This measure requires that upon receipt of a written application the state registrar shall provide a copy of the original birth certificate which may provide accurate birth information to an Oregon born adopted person 21 years of age or older." In this instance, the explanatory statement's insufficiency may be cured by deleting the words, "which may provide accurate birth information." That change will be made.

■　Petitioner separately argues, and respondents at oral argument conceded, that the second sentence of the first paragraph of the explanatory statement is insufficient. That sentence states: "Current Oregon law prohibits the release of an original birth certificate which may provide birth information to an adopted person without a court order." The parties, however, agree that ORS 432.420 provides for access to such records by agencies operating voluntary adoption registries. The insufficiency of the sentence can be cured by striking the words "which may provide birth information" from

the sentence and inserting the word "such" after the word "to," so that the sentence reads: "Current Oregon law prohibits the release of an original birth certificate to such an adopted person without a court order." That change, too, will be made.

We have considered petitioner's other contentions, but do not find them to be well taken.

Based on the foregoing, we certify the following explanatory statement for Ballot Measure 58:

This measure changes existing law to allow an adopted person 21 years of age or older to obtain a copy of the person's original birth certificate. Current Oregon law prohibits the release of an original birth certificate to such an adopted person without a court order. The law currently requires that upon receipt of a decree of adoption or a report of adoption from a court, the state registrar shall issue a new birth certificate unless the court, the adoptive parents or the adopted person requests otherwise.

This measure requires that upon receipt of a written application the state registrar shall provide a copy of the original birth certificate to an Oregon born adopted person 21 years of age or older. This measure requires that the procedures, filing fees and waiting periods for certified copies of original birth certificates be the same for requests by adopted persons as for non-adopted persons.

This measure applies to persons adopted in the past or in the future. There are no exceptions to this measure.

Ballot measure explanatory statement certified as modified. Pursuant to ORAP 1.20(4) and notwithstanding ORAP 11.30(10), this opinion will become effective when the appellate judgment issues. The State Court Administrator shall issue the appellate judgment at 12:00 p.m. on August 31, 1998, unless a petition for reconsideration is both filed with and physically received by the Office of the State Court Administrator by that time. Any timely petition for reconsideration will stay issuance of the appellate judgment until the court acts on such petition.

**DURHAM, J.,** dissenting.

I respectfully dissent. The majority concludes that, pursuant to ORS 251.235, it must alter the explanatory statement prepared in accordance with ORS 251.215(1) by the five-person committee. That conclusion rests on the majority's implicit determination that the committee's statement is "insufficient or unclear," ORS 251.235, as "an impartial, simple and understandable statement explaining the measure," ORS 251.215(1). The majority construes ORS 251.235 to require this court to certify a different explanatory statement that complies with ORS 251.215(1) if the court concludes that the committee's explanatory statement is insufficient or unclear. I agree with that interpretation of ORS 251.235. The question that remains is whether the judges on this court are authorized by the Oregon Constitution to comply with that requirement. I conclude that they are not.

Article III, section 1, of the Oregon Constitution, provides:

> "The powers of the Government shall be divided into three seperate (sic) departments, the Legislative, the Executive, including the administrative, and the Judicial; and no person charged with official duties under one of these departments, shall exercise any of the functions of another, except as in this Constitution expressly provided."

The legislative power of the state government is vested in the Legislative Assembly and, with respect to certain initiative and referendum powers, in the people. Article IV, section 1(1), of the Oregon Constitution, provides:

> "The legislative power of the state, except for the initiative and referendum powers reserved to the people, is vested in a Legislative Assembly, consisting of a Senate and a House of Representatives."

This court exercises only "judicial power." Article VII (Amended), section 1, of the Oregon Constitution, provides, in part:

> "The judicial power of the state shall be vested in one supreme court and in such other courts as may from time to time be created by law."

Those constitutional provisions enact two protections against encroachments in the exercise of power by the separate branches of government. First, the constitution assigns a particular type of governmental power—and only that power—to each branch. For example, the authorization to the Judicial Branch to exercise "judicial power" means that the courts may not carry out legislative or executive functions. Second, Article III, section 1, forbids any person charged with official duties in one branch of government from performing the functions constitutionally assigned to another branch unless the constitution expressly so provides. That provision prohibits a judge from carrying out any legislative or executive function. The exception set forth at the end of Article III, section 1 ("except as in this Constitution expressly provided"), is inapplicable here.

Petitioner's argument, viewed in light of the constitutional provisions just reviewed, raises the following question: Do the judges in the majority exercise a nonjudicial function, in violation of Article III, section 1, when they revise the committee's explanatory statement and certify the revised explanatory statement to the Secretary of State? In my view, the answer is yes.[1]

The explanatory statement for a state measure has one function: To explain the measure to the voters in not

---

[1] Justice Unis addressed a similar issue regarding the court's duty to revise a ballot title pursuant to ORS 250.085(5) in his dissenting opinion in *Rooney v. Kulongoski (Elections Division #13)*, 322 Or 15, 55, 902 P2d 1143 (1995) (Unis, J., dissenting). I joined that dissenting opinion. I rely here on the rationale and supporting authorities cited in Justice Unis' opinion in *Rooney* because, for purposes of analysis under Article III, section 1, of the Oregon Constitution, there is no material difference in the function of a ballot title and an explanatory statement, or in the court's statutory duty on review to revise those statements if they do not meet statutory requirements.

In two judicial review cases, I joined in the conclusion that an explanatory statement should be modified. *See Deras v. Keisling*, 320 Or 1, 879 P2d 850 (1994) (explanatory statement certified as modified); *Lewis v. Keisling*, 320 Or 13, 18, 879 P2d 857 (1994) (Unis, J., dissenting) (dissenting opinion advocating modification of explanatory statement). However, those cases predated *Rooney*, in which Justice Unis pointed out the separation of powers problem concerning modification of a ballot title. This case is the first case after *Rooney* to raise the question whether modification of an explanatory statement violates the separation of powers. *See Brummell v. Kulongoski*, 324 Or 131, 922 P2d 666 (1996) (explanatory statement certified without modification). As explained here, I now conclude that Justice Unis' rationale in *Rooney* is applicable in the explanatory statement context.

more than 500 words. ORS 251.215(1). The Secretary of State must print the explanatory statement in the voters' pamphlet, ORS 251.185, and distribute the voters' pamphlet to voters throughout Oregon, ORS 251.175. For many voters who choose not to study the text of a measure before voting, the explanatory statement and ballot title in the voters' pamphlet are the only sources of information about the consequences of adopting a measure.

The political character of the five-person committee is undeniable. Under ORS 251.205(2) to (4), the proponents of the measure are entitled to appoint two members of the committee. The Secretary of State also must appoint two members from among the measure's opponents. If the four appointed members cannot agree on a fifth member, then the Secretary of State appoints a fifth member. The committee must consider the public's suggestions, submitted pursuant to ORS 251.215(2), for modification of the committee's explanatory statement, and file any revised statement with the Secretary of State. ORS 251.215(3). At least three out of the five committee members must vote to approve an explanatory statement. ORS 251.215(4).

The statutes just described demonstrate what is obvious to any knowledgeable observer: The explanatory statement is the end product of a political process that is involved directly with the creation of law by initiative and referendum. The legislature has designed that political process and the resulting explanatory statement to provide influence and guidance to the lawmaker (here, the electorate). That influence can dictate the success or failure of a measure at the polls and control the legal interpretation of a measure should the voters adopt it.

The latter point is made clear by this court's cases that treat the explanatory statement of a measure as legislative history. For example, in *State v. Wagner*, 305 Or 115, 136-39, 752 P2d 1136 (1988), this court quoted both the ballot title and the explanatory statement for a measure and interpreted the measure in question in accordance with the description of the measure set forth in those statements.

In *Ecumenical Ministries v. Oregon State Lottery Comm.*, 318 Or 551, 560 n 8, 871 P2d 106 (1994), this court said:

> "In considering the history of a constitutional provision adopted through the initiative process, this court examines, as legislative facts, other sources of information that were available to the voters at the time the measure was adopted and that disclose the public's understanding of the measure. Such information includes the ballot title and arguments for and against the measure included in the voters' pamphlet, and contemporaneous news reports and editorial comment on the measure. *See State v. Wagner*, 305 Or 115, 131-34, 752 P2d 1136 (1988) (examining those items in determining the meaning of a constitutional amendment adopted through the initiative process)."[2]

Finally, in *MacAfee v. Paulus*, 289 Or 651, 655, 616 P2d 493 (1980), this court stated:

> "Voters' Pamphlet statements in turn become 'legislative' history when that meaning later is disputed by persons affected by the measure in a concrete case."

The foregoing discussion leads to the conclusion that the preparation of the explanatory statement is a significant preliminary step in the enactment of law by initiative or referendum. The requirement in ORS 251.235 that the court revise any explanatory statement that is insufficient or unclear enmeshes the court in the creation and approval of a statement that serves to influence voter approval or rejection of the measure. Moreover, if the voters approve a measure for which the court revised the explanatory statement, the court's own words about the meaning of the measure may play a significant, if not controlling, role in any subsequent

---

[2] By citing *Ecumenical Ministries*, I do not necessarily endorse all of the court's discussion about what legislative facts form the legislative history of a constitutional provision. For example, paid written arguments for and against a measure in the voters' pamphlet and preelection news and editorial treatment of a measure in the media may reflect only partisan viewpoints and, if so, will shed little or no light on the voters' intention in approving a measure. Similarly, the court cannot assume that all ballot titles and explanatory statements are free of partisan manipulation. Those sources properly may serve as legislative history that clarifies the meaning of ambiguous text in a measure only if they disclose the voters' intention in voting to approve the measure. Whether they meet that standard requires analysis on a case-by-case basis.

judicial construction of the measure. The process of drafting an alternative explanatory statement, pursuant to ORS 251.235, bears no resemblance to the resolution and remediation of a genuine case or controversy, *i.e.*, the exercise of "judicial power." In my view, insofar as ORS 251.235 compels the court to revise an explanatory statement for the voters' pamphlet, it requires the court to carry out a function that properly belongs to the Legislative or Executive Branch, not the Judicial Branch. Accordingly, Article III, section 1, of the Oregon Constitution, prevents the members of this court from complying with that statutory requirement.

Ideally, the parties to a proceeding under ORS 251.235 will raise questions regarding the court's authority to revise an explanatory statement in their briefs. However, even in the absence of argument and briefing regarding those questions, it is appropriate—indeed, necessary—for the court to consider such questions on its own motion. To ask whether a statute would compel the court to carry out a function that falls outside of the judicial power is to ask whether the court has jurisdiction. Because the issue here implicates the court's jurisdiction, the court must address that question whether or not the parties raise it in their briefs.

ORS 251.235 does not authorize the court to remand to the committee any explanatory statement that the court determines is insufficient or unclear. I do not express a view about whether judicial review coupled with a remand procedure would pass muster under Article III, section 1, of the Oregon Constitution. It is sufficient to say that the revision requirement in ORS 251.235 does not. I would dismiss the petition.

Accordingly, I dissent.