Argued and submitted August 24, ballot measure explanatory statement certified
September 8, 2000

## Daniel MEEK,
*Petitioner,*

*v.*

## Roger GRAY,
### Becky Miller, Margaret Olney,
### Bill Sizemore, Cecil Tibbets,
*Respondents.*

### (SC S47798)

10 P3d 251

22

Daniel W. Meek, Portland, *pro se*, argued the cause and filed the petition.

Margaret Olney, Portland, argued the cause and filed the memoranda for respondent Roger Gray and for herself as respondent.

Gregory W. Byrne, Portland, argued the cause for respondents Becky Miller and Bill Sizemore.

Cecil Tibbets, Salem, *pro se*, argued the cause.

GILLETTE, J.

## GILLETTE, J.

In this original proceeding, petitioner challenges the explanatory statement for Ballot Measure 98 (2000). *See* ORS 251.205 (providing for creation and manner of selection of committee of five citizens to prepare explanatory statement for initiated and referred measures); ORS 251.215 (providing for preparation and filing of explanatory statement by committee). The initiative measure would amend Article XV of the Oregon Constitution by adding a restriction that no public funds shall be spent to collect or assist in the collection of political funds.

■  After the explanatory statement committee prepared and filed the explanatory statement at issue, the Secretary of State held a hearing to receive comments on the statement. Petitioner offered suggestions for changes to the explanatory statement at that hearing. Petitioner therefore is entitled to seek a different explanatory statement in this court. ORS 251.235; *see also Homuth v. Keisling (S39531)*, 314 Or 214, 218, 837 P2d 532 (1992) (ORS 251.235 authorizes Supreme Court review of explanatory statement when any suggestions were offered at Secretary of State's hearing).

■■  The committee is directed by statute to prepare an explanatory statement that is an "impartial, simple and understandable statement explaining the measure." ORS 251.215(1). This court's task is to determine whether the explanatory statement contains a sufficient and clear statement explaining the measure. *See Sizemore v. Myers*, 327 Or 456, 459, 964 P2d 255 (1998) (so stating); ORS 251.235 (authorizing court to consider challenges to explanatory statement on grounds that statement is "insufficient or unclear"). Petitioner bears the burden of demonstrating that the explanatory statement is insufficient or unclear. *June v. Roberts*, 310 Or 244, 248, 797 P2d 357 (1990).

■  Petitioner raises several arguments as to why he believes that the committee's statement is both insufficient and unclear. His primary argument is that the explanatory statement fails to indicate that one of the effects of Measure 98 would be to

"eviscerate the Oregon Voters' Pamphlet by removing at least 65-70% of the funding that is necessary for its production and publication. The result will be either no Voters' Pamphlet or one that contains no candidate statements or arguments supporting or opposing ballot measures."

As noted, Measure 98 would prohibit spending "public funds" to collect or assist in collecting "political funds," as the measure defines each of those terms. The measure, however, exempts from the definition of the term "public funds" "the fee charged by the Secretary of State or a county elections division for placing a paid statement in an official Voters' Pamphlet." The committee explained that exemption as follows:

"Political funds do not include the fee charged by the Secretary of State or a county for placing a paid statement in an official voters' pamphlet, however, public resources are used to produce the voters' pamphlet."

Petitioner argues that the foregoing explanation necessarily but incorrectly implies that, if voters adopt the measure, then state and local governments will continue to publish a voters' pamphlet. From that argument, petitioner concludes that the committee failed to prepare a statement that comports with statutory standards, because the statement does not detail what he asserts necessarily will be the effect of the measure on the voters' pamphlet.

■ We understand petitioner's argument to be that the committee was *required* to include in the explanatory statement a discussion of the impact that the measure would have on the continuing financial viability of the voters' pamphlet. We reject that argument. The choice of which effects to include or omit is a discretionary one for the committee, *Sizemore*, 327 Or at 466-68, and one that we will not disturb unless a challenge can show that the choice makes the explanatory statement as a whole insufficient or unclear. *Id.* Petitioner has not made that showing here.

We have considered the other arguments that petitioner raises and conclude that they do not establish that the explanatory statement for Ballot Measure 98 is either insufficient or unclear. ORS 251.215. A detailed discussion of our

reasons for that conclusion would not serve the interests of the bar or the public.

We certify to the Secretary of State the following explanatory statement for Ballot Measure 98:

Ballot Measure 98 adds a new section to the Oregon Constitution that prohibits anyone from using public resources to collect or help collect political funds. Public resources that cannot be used to collect political funds include public moneys, public employee time, public buildings and public equipment and supplies.

The political funds that a person cannot collect by using public resources include money contributed to candidates, political committees or political parties, money spent lobbying an elected official and money spent supporting or opposing a candidate, ballot measure or initiative petition. This prohibition applies if any portion of the money collected with the assistance of public funds is passed through to another organization that, in turn, uses any portion of the money for a political purpose. Political funds do not include the fee charged by the Secretary of State or a county for placing a paid statement in an official voters' pamphlet, however, public resources are used to produce the voters' pamphlet.

A public entity is prohibited from using its resources to collect political funds even if the public entity is reimbursed for those resources.

Any person or organization violating this measure by using funds (collected with the assistance of public resources) for a political purpose, or by co-mingling those nonpolitical funds with political funds, shall lose the right to have money collected for it for any purpose by any Oregon public entity.

This measure directs the Oregon Legislative Assembly to establish a financial penalty for persons and organizations that violate this measure. The penalty must be not less than double the amount illegally contributed or spent for a political purpose.

This measure prohibits several activities currently allowed under Oregon law. For example, under this measure it would be illegal:

(1)   For public entities to collect political funds for public employee unions by means of payroll deduction.

(2)   To implement a public employee's request to deduct part of the employee's wages and transfer that deducted money to an organization that uses all or part of that money to lobby elected officials or to support or oppose candidates, political parties, initiatives or ballot measures.

(3)   For any organization that receives money from public employees through payroll deductions or electronic transfers to use any portion of the money to lobby an elected official or to support or oppose candidates or ballot measures. Organizations that use payroll deduction include charities, insurance companies and financial institutions.

(4)   For individuals and organizations that are involved in political activities, such as lobbying or supporting or opposing ballot measures or candidates, to use public buildings for meetings or other activities, if the individual or organization will seek or accept political contributions on the public property.

Ballot measure explanatory statement certified. Under ORAP 1.20(4), and notwithstanding ORAP 9.25(1) and ORAP 14.05, this opinion will become effective when the appellate judgment issues. The State Court Administrator shall issue the appellate judgment at 5:00 p.m. on September 11, 2000, unless a petition for reconsideration is both filed with and physically received by the Office of the State Court Administrator by that time. Any timely petition for reconsideration will stay issuance of the appellate judgment until the court acts on such petition.